STATE OF NEBRASKA, APPELLEE, V. HAROLD LAMONT
OTEY, APPELLANT.

287 N. W. 2d 36

Filed December 18, 1979. No. 42204.

S. J. Albracht of Lathrop, Albracht & Swenson, for
appellant.

Paul L. Douglas, Attorney General, and Sharon M.
Lindgren, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The defendant, Harold Lamont Otey, was convicted of first degree murder in the perpetration of a sexual assault in the first degree. He was sentenced to death and the case is here for review pursuant to section 29-2525, R. R. S. 1943. The assignments of error relate to the denial of a continuance requested by the defendant; the discharge of a juror by the trial court; the admission of evidence relating to a subsequent assault; and the imposition of the death penalty. The defendant also contends that he should have been declared a sexual sociopath and that the Nebraska death penalty statutes are unconstitutional. There is no contention that the evidence was not sufficient to support the finding of guilty beyond a reasonable doubt.

The murder was committed during the early morning hours of June 11, 1977, in Omaha, Nebraska. The defendant entered the apartment of the victim and took a stereo set which he placed behind a garage nearby. This stereo was later identified and traced back to the defendant.

The victim awakened when the defendant reentered the apartment. The defendant told the victim that he was going to rob her and that he would rape her. When she resisted he inflicted a knife wound across the top of her forehead. The defendant then sexually assaulted the victim. After the sexual assault the defendant and the victim went to the second floor of the apartment to get her money. There the defendant stabbed the victim a number of times inflicting deep wounds, struck her about the head with a hammer, and strangled her with a belt. The evidence shows that the victim died from the multiple wounds and strangulation inflicted upon her by the defendant.

The defendant was apprehended in Florida in January 1978. On January 28, 1978, he was interviewed there by two Omaha police officers and after proper warnings gave a voluntary statement which was a full confession. The statement was received in evidence and there is no contention here that the statement was not voluntary or should not have been received in evidence.

The information which was filed on February 1, 1978, listed only the name of a police officer at the time it was filed. The case was set for trial on April 5, 1978. On March 23, 1978, the county attorney notified the defendant that the State would ask leave to endorse the names of 44 additional witnesses upon the information. On March 31, 1978, the defendant moved for a continuance which was denied on April 5, 1978. The motion alleged that additional time was required to prepare for trial because the defendant was undergoing psychiatric evaluation and defense counsel had been unable to locate certain possible defense witnesses. There was no showing made as to names of any witnesses, other than a Donald Lawrence, or as to what their testimony would be. The trial court offered to allow defense counsel to disclose in camera what the nature of the testimony might be, but the offer was not accepted.

A motion for a continuance is addressed to the sound discretion of the trial court, and an order denying a continuance will not be disturbed in the absence of a showing of a clear abuse of discretion. State v. Newton, 193 Neb. 129, 225 N. W. 2d 562. Where the purpose of a continuance is to obtain the testimony of witnesses who are absent from the jurisdiction, a showing should be made that the witnesses can be located, that they will testify, and that their testimony would be relevant. There was no showing made in support of the continuance requested in this case.

There is some indication from the argument on

the motion that defense counsel was attempting to find evidence for a possible alibi defense, but counsel did not accept the trial court's offer to allow a showing to be made in camera. The defendant did not testify at the trial and no alibi evidence was produced. Also, there was no issue raised concerning the mental responsibility of the defendant.

The record does not show that the defendant was prejudiced by being brought to trial on April 6, 1978. The information had been on file for more than 60 days and, in the absence of a showing of special facts or circumstances, there is no basis on which to conclude that the defendant did not have a reasonable time in which to prepare for trial.

The indorsement of the names of additional witnesses just before trial is a practice that should be avoided. Here the defendant was given less than one week's notice before the trial commenced. However, the record shows that these were prosecution witnesses, most of whose names appeared in the police reports that had been furnished to the defendant or they are otherwise identified in the record. There is no claim of surprise and no showing of actual prejudice because of the late indorsement of names. Under the circumstances in this case, it was not an abuse of discretion to refuse a continuance on that ground. We conclude that the record fails to show an abuse of discretion in denying a continuance to the defendant.

After the jury had been sworn, but before the trial had commenced, one of the jurors approached the trial court and stated that he could not be a fair and impartial juror because the defendant, if convicted, might be sentenced to death. With the defendant present the trial court informed both counsel and offered to allow them to question the juror. After both counsel declined, the trial court questioned the juror in their presence and ascertained that the juror could not be fair and impartial. The juror was then

excused and an alternate seated. The defendant moved for a mistrial on the ground that the jury selection was tainted. Further examination of the juror by both counsel disclosed that the juror had not discussed his feelings concerning the death penalty with other members of the jury. The motion for a mistrial was overruled.

The procedure which was followed in this case was proper. The disqualification did not become known until the juror approached the trial court and stated that, after considering the matter overnight, he was unable to be a fair and impartial juror. The juror was then examined in the presence of the defendant and counsel and the fact of disqualification established. An alternate was seated by the procedure provided by statute. There was no reason to declare a mistrial. Banks v. United States, 204 F. 2d 666 (8th Cir., 1953).

Prior to trial the defendant filed a motion in limine to exclude from the trial any evidence relating to an assault by the defendant upon another woman on July 14, 1977. The motion was overruled and evidence relating to the July 14 assault was received at the trial.

The evidence shows that on July 14, 1977, the defendant accosted the victim as she was about to enter her home. The defendant placed his hand over her mouth and held a knife at her throat and started to pull her into a garage. When she screamed the defendant ran away. The defendant was driving an automobile owned by Randall J. Harris, which was stopped at a police roadblock shortly after the incident. Although the defendant escaped, he left the knife which had been used in the assault in the seat of the automobile. The knife was identified as belonging to the defendant. When the defendant was questioned in Florida he acknowledged that the knife which had been left in the seat of the Harris car following the July 14 assault was the knife

that had been used in the murder.

The evidence concerning the July 14 assault corroborated the defendant's statement and was admissible to show that the defendant had the murder weapon in his possession after the crime. It was admissible also to prove intent, motive, plan, identity, modus operandi, and absence of mistake or accident. The State is entitled to prove any fact or circumstance which tends to establish any element of the crime, even though the fact or circumstance may prove or tend to prove another crime. State v. Riley, 182 Neb. 300, 154 N. W. 2d 741.

After the verdict of guilty had been returned, the defendant moved to suspend further proceedings upon the grounds that sections 28-401 and 29-2519 et seq., R. R. S. 1943, were unconstitutional and that the defendant was a sexual sociopath. Both motions were overruled.

The Nebraska first degree murder statute and the procedural statutes relating to the determination as to whether a death sentence should be imposed were considered at length and held to be constitutional in State v. Simants, 197 Neb. 549, 250 N. W. 2d 881. That case is controlling here.

A determination as to whether a defendant is a sexual sociopath is of no importance where a death sentence has been imposed. The purpose of the sexual sociopath law is to provide confinement with treatment for those persons subject to the law who are amenable to treatment, and confinement without treatment for those subject to the law but not amenable to treatment. We have determined that sentencing is not to be delayed indefinitely where sexual sociopath proceedings have been instituted. State v. Shaw, 202 Neb. 766, 277 N. W. 2d 106. Since the death penalty has been imposed upon the defendant in this case, none of his contentions concerning the sexual sociopath law require further consideration in this appeal.

A three-judge panel was convened as provided in section 29-2520, R. R. S. 1943, to determine what sentence should be imposed on the defendant. After an evidentiary hearing, the panel found that the murder was committed "to conceal the identity of the perpetrator of a crime" and that "the murder was especially heinous, atrocious, cruel, and manifested exceptional depravity by ordinary standards of morality and intelligence." The panel found specifically that this latter aggravating circumstance existed in its entirety and to a great degree in this case. The panel found that none of the mitigating circumstances set out in section 29-2523, R. R. S. 1943, existed. The panel concluded that sufficient aggravating circumstances existed to justify the imposition of the death penalty. The defendant was then sentenced to death. In its order of sentence the panel discussed the evidence at length and set forth in detail why the sentence imposed was a proper sentence in this case.

It is unnecessary to set out the evidence again in this opinion. Our review of the record has convinced us that the findings of the panel are fully supported and that there are no mitigating circumstances in this case to weigh against the imposition of a sentence of death. We find no error or abuse of discretion in the sentence imposed upon the defendant in this case.

We have made the review and analysis of similar cases required by sections 29-2521.02 et seq., R. R. S. 1943, in accordance with the procedure and rules announced in State v. Williams, *ante* p. 56, 287 N. W. 2d 18. We find the sentence of death imposed in this case is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C. J., concurring in part, and in part dissenting.

For the reasons more particularly set out in my opinion concurring in part and dissenting in part in State v. Williams, *ante* p. 56, 287 N. W. 2d 18, I likewise concur in this case in all of the majority opinion save and except that part which affirmed the imposition of the death penalty. As in State v. Williams, *supra*, I would order the defendant confined to the Nebraska Penal and Correctional Complex for the balance of his natural life.