**Harold Lamont OTEY, Appellant,**

v.

**Gary GRAMMER, Warden of Nebraska Penal and Correctional Complex, Appellee.**

**No. 87–1522.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 18, 1987.

Decided Oct. 13, 1988.

---

Jerry Soucie, Lincoln, Neb., for appellant.

Melvin K. Kammerlohr, Sr. Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before JOHN R. GIBSON, BOWMAN, and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Harold Lamont Otey was convicted of first degree murder in the perpetration of first degree sexual assault and was sentenced to death. His conviction and sentence were affirmed on direct appeal to the Nebraska Supreme Court in *State v. Otey*, 205 Neb. 90, 287 N.W.2d 36 (1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2974, 64 L.Ed.2d 846 (1980). State post-conviction relief also was denied, and that result was likewise affirmed on appeal. *State v. Otey*, 212 Neb. 103, 321 N.W.2d 453, *cert. denied*, 459 U.S. 1080, 103 S.Ct. 502, 74 L.Ed.2d 641 (1982).

Otey then filed in federal court a petition for a writ of habeas corpus, raising thirty-one grounds for relief. Adopting the extensive report and recommendation of the Magistrate,[1] the District

---

1. The Honorable David L. Piester, United States Magistrate for the District of Nebraska.

Court[2] denied Otey's petition. For reversal, Otey argues that: (1) he was denied effective assistance of counsel during his trial, at sentencing, and on appeal; (2) he was denied an impartial jury when the trial court, after voir dire was completed and the jury sworn, removed a juror for cause for expressing reservations about the death penalty; (3) the Nebraska death penalty statute is unconstitutional because it deprives defendants of the right to have a jury determine the facts underlying aggravating and mitigating circumstances; (4) the sentencing panel erred by failing to conduct a proportionality review; (5) the sentencing panel erred in considering charges of other crimes; (6) the death penalty in Nebraska is arbitrarily imposed; and (7) certain incriminating statements were obtained in violation of *Miranda.* For the reasons set forth below, we affirm.

## I.

Otey contends that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the Constitution by: (1) trial counsel's failure to conduct an adequate investigation; (2) trial counsel's failure to discuss trial strategy and sentencing with Otey; (3) trial counsel's performance at the sentencing hearing; (4) trial counsel's failure to request that all stages of the proceeding be recorded; (5) trial counsel's reference in his opening statement to Otey's intention to testify when no such decision had been made and when, in fact, Otey did not take the stand; and (6) appellate counsel's refusal to raise meritorious issues despite Otey's demands that the issues be raised.

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such a claim, Otey must show that counsel's actions were unreasonable

when viewed in the totality of the circumstances and that there is a reasonable probability that, but for counsel's unprofessional errors or omissions, the result of the proceeding would have been different.[3] *See Strickland,* 466 U.S. at 687–96, 104 S.Ct. at 2064–69; *Lawrence v. Lockhart,* 767 F.2d 449, 450 (8th Cir.1985). If proof of one element is lacking, a court need not examine the other. *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069. There is a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066.

## A.

In his first ineffective assistance claim, Otey argues that trial counsel failed to investigate his case adequately. This claim is based on counsel's failure to conduct pretrial interviews of most of the trial witnesses and counsel's failure to locate potential witnesses known to Otey by nicknames only. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. Using this standard, we conclude that trial counsel's investigation was not unreasonable.

Counsel read the voluminous police reports numerous times and personally interviewed several of the witnesses, including Tucker Brown, a boyfriend of the deceased who allegedly confessed to the crime.[4] Further, although Otey identified prospective witnesses by nickname only and failed to provide their correct names or address-

---

**2.** The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

**3.** Although we apply the same standard for adjudging attorney competence in capital and non-capital cases, the seriousness of the offense is a factor to be considered in the overall assess-

ment of counsel's performance. *Pickens v. Lockhart,* 714 F.2d 1455, 1460 n. 4 (8th Cir. 1983).

**4.** Brown was interviewed by the Omaha police and subsequently was cleared as a suspect.

es, counsel attemped to locate them and, in fact, did manage to speak to at least one of them. Considering all the circumstances, we believe that the limits counsel placed on his investigation represent a reasonable exercise of professional judgment. *See id.* at 691, 104 S.Ct. at 2066. *See also Walker v. Solem,* 687 F.2d 1235, 1238–39 (8th Cir. 1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1789, 76 L.Ed.2d 357 (1983).

■ Moreover, Otey has not demonstrated that he was prejudiced by trial counsel's alleged deficiencies. The burden is on the petitioner to demonstrate what evidence his trial counsel could have discovered that would have helped his defense. *See Beans v. Black,* 757 F.2d 933 (8th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed. 2d 334 (1985). Here, Otey has not identified any harm to his defense resulting from counsel's failure to interview more of the witnesses before trial. And as the magistrate noted, Otey has failed to present even the slightest hint of the nature of any favorable evidence that would have been uncovered by a more searching investigation. In particular, Otey has not presented any evidence whatsoever that the "nicknamed" witnesses would have had favorable testimony, nor has he provided even the slightest suggestion of what their testimony would have been. In these circumstances, he has failed to establish prejudice, as required by *Strickland,* arising from trial counsel's asserted failure to conduct an adequate investigation. Thus he has not satisfied either element of *Strickland.*

### B.

■ Otey's second ineffective assistance claim is that counsel failed to discuss with

him trial strategy and sentencing. When the claim is that counsel failed to communicate with the defendant, it must appear only that trial counsel fulfilled his duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. The record reveals that Otey's counsel fulfilled this duty.

In addition to advising Otey of the consequences of a guilty plea and the penalties for first degree murder, counsel discussed the case with him, pursued his suggestions, and apprised him of every motion filed and the reasons for such filing. Prior to trial and sentencing, counsel informed Otey of his strategy and of the evidence and witnesses that would be presented. In these circumstances, we cannot say either that counsel was deficient or that Otey was prejudiced by the lack of more extensive discussions with counsel. *See, e.g., Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980).

### C.

Otey argues that trial counsel's performance at the sentencing hearing was inadequate. He sets forth six specific bases for this argument, only one of which, that counsel failed to object to the admission of a statement allegedly taken in violation of Otey's *Miranda* rights, we believe warrants discussion.[5]

■ We conclude that Otey suffered no prejudice from trial counsel's failure to object to the disputed statement as there is no merit to his *Miranda* claim.[6] The ad-

---

5. The Magistrate found that, although it was deemed exhausted, this claim was waived as it had not been presented to the Nebraska Supreme Court. However, because the question of whether a waiver occurred is not free from doubt, we believe it would be in the interest of justice to dispose of this claim on the merits. *See Nelson v. Solem,* 714 F.2d 57, 60 (8th Cir. 1983) (Lay, C.J., concurring). *Cf. Feeney v. Auger,* 808 F.2d 1279, 1283 n. 5 (8th Cir.1986). "As waiver is not a jurisdictional issue, we think we should go on to consider the merits of [the] constitutional claim ... for if we reject it on the merits, we reach the same result as if we had

held that he had waived the claim, but without having to decide the question of waiver." *Carbajol v. Fairman,* 700 F.2d 397, 399–400 (7th Cir.1983).

6. We also doubt that counsel's representation at the sentencing hearing fell below an objective standard of reasonableness. Counsel did not object, in part, for tactical reasons. He apparently sought to rely upon the statement at issue, in conjunction with a letter from a psychiatrist, to establish the existence of either a nonstatutory mitigating factor or the "diminished ca-

missibility of statements obtained after a person in custody has decided to remain silent depends on whether his right to cut off questioning has been "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). In determining this issue, three factors have been identified for consideration: (1) whether the police immediately ceased the interrogation upon defendant's request; (2) whether they resumed questioning only after the passage of a significant period of time and provided fresh *Miranda* warnings; and (3) whether they restricted later interrogation to a crime that had not been the subject of the first interrogation. *Id.* at 106, 96 S.Ct. at 327; *Jackson v. Wyrick*, 730 F.2d 1177, 1179 (8th Cir.), *cert. denied*, 469 U.S. 849, 105 S.Ct. 167, 83 L.Ed.2d 102 (1984). *See also Stumes v. Solem*, 752 F.2d 317, 321 n. 4 (8th Cir.), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985). We examine the record with these factors in mind.

At a so-called *Miranda* pre-trial hearing, two officers of the Omaha Police Department testified that they interrogated Otey twice during a two-day period. They apprised him of his constitutional rights at least four times over the two days and received from him at least two signed rights advisory forms. During the second interview, after a short, general discussion, the dialogue turned to the murder for which Otey later was indicted. Otey was advised of his rights and he signed a rights advisory form. The officers then recorded a brief statement, but immediately stopped the tape when Otey indicated that he was reluctant to answer specific questions about the murder.[7] Otey then agreed to have his general conversation recorded,

and a new tape was inserted into the recorder. It is this tape about which Otey complains. After being advised that he was not required to say anything (another full *Miranda* warning was not given at this point), Otey delivered a general, rambling narrative about his life sprinkled with a few references to the murder.

We conclude that Otey's constitutional rights were scrupulously honored. When Otey appeared unwilling to answer specific questions, interrogation immediately ceased. Otey repeatedly was informed of his rights, and these rights were fresh in his mind when he agreed to record the statement at issue. Further, during Otey's general narrative, the officers did not ask again the specific questions which Otey previously was hesitant to answer. "A person in custody may selectively waive his right to remain silent by indicating that he will respond to some questions, but not to others." *United States v. Lopez–Diaz*, 630 F.2d 661, 664 n. 2 (9th Cir.1980) (citation omitted). *See also Stumes v. Solem*, 752 F.2d at 320. Because the officers here carefully observed Otey's *Miranda* rights by allowing him to "control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation," *Mosley*, 423 U.S. at 103–104, 96 S.Ct. at 326, the statement was admissible, and Otey's counsel did not render ineffective assistance in not objecting to its admission at the sentencing hearing.

**D.**

Otey contends that counsel was derelict in failing to ensure the recording of the voir dire and the opening and closing statements. The unrebutted testimony of Otey's trial counsel is that in criminal

---

pacity" mitigating circumstance set forth in Neb.Rev.Stat. § 29–2523(2)(g).

7. Otey testified that, at this point in the interrogation, he told the officers that he had better not answer any more questions until he had seen a lawyer. Even were we to credit Otey's testimony, the *Mosley* "scrupulously honored" standard is still applicable. The Supreme Court held in *Solem v. Stumes*, 465 U.S. 638, 650, 104 S.Ct. 1338, 1345, 79 L.Ed.2d 579 (1984), that the bright-line rule established in *Edwards v. Arizo-*

*na*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him or her), should not be applied retroactively. In the present case, Otey's conviction and sentence were affirmed on direct appeal in 1979 and certiorari was denied in 1980. Thus, when *Edwards* was decided in 1981, Otey not only had been convicted but already had exhausted his avenues of direct appeal.

cases, even those for first degree murder, it is the customary practice in the state district court not to record voir dire and opening and closing statements. This being the prevailing practice, counsel cannot be found to have been unreasonable, and thus ineffective, for conforming to it. *See Karabin v. Petsock,* 758 F.2d 966, 969 (3d Cir.), *cert. denied,* 474 U.S. 857, 106 S.Ct. 163, 88 L.Ed.2d 135 (1985). *Cf. Mitchell v. Wyrick,* 698 F.2d 940, 941 (8th Cir.) ("Mere absence of a perfect transcript does not necessarily deny one due process of law."), *cert. denied,* 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983).

### E.

■ Otey next argues that his right to effective assistance of counsel was violated when counsel allegedly commented in his opening statement that Otey would testify on his own behalf when this decision had not yet been made and when, in fact, Otey did not take the stand. Even assuming that such a comment was made,[8] we believe that Otey suffered no prejudice thereby.

The improper comment, if made at all, apparently was made only once. Moreover, the trial court, at the request of Otey's counsel, gave the jury a cautionary instruction not to draw any conclusions or inferences from Otey's failure to testify. In light of the overwhelming evidence of guilt presented at trial, Otey has failed to demonstrate a reasonable probability that, if the comment had not been made, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. *Cf. United States v. Bailey,* 734 F.2d 296 (7th Cir.), *cert. denied,* 469 U.S. 931, 105 S.Ct. 327, 83 L.Ed. 2d 263 (1984) (defendant was not denied effective assistance of counsel on the ground that he did not testify even though defense counsel had told the jury in his opening statement that defendant would take the stand, where counsel explained the change in plan by saying that the Government had failed to prove its case, thereby implying that defendant's testimony was unnecessary). Otey's failure to make the required showing of prejudice defeats this claim.

### F.

■ Finally, Otey claims that counsel in his direct appeal was ineffective because he failed to raise the issues of ineffective assistance of trial counsel and the admissibility of Otey's statements.[9] After reviewing the case and discussing the issues with Otey, counsel thoroughly briefed seven issues that in his professional judgment were not frivolous and that offered some hope of success on appeal. He chose not to dilute this effort through the inclusion of weaker arguments. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986) (quoting *Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983)). We are satisfied that appellate counsel's performance cannot be considered inadequate.

### II.

We have carefully reviewed the other issues raised by Otey and find them to be without merit. They have been thoroughly ventilated by the Magistrate in his lengthy and comprehensive report and recommendation and do not warrant further discussion here.

The decision of the District Court is affirmed.

---

8. There is a factual dispute as to what actually was said in the opening statement. Otey has attempted to reconstruct the statement based upon his memory as well as two newspaper accounts of the trial. Trial counsel denies making the comment in question.

9. Although the Magistrate found that Otey had waived this claim, it can be easily disposed of on the merits. *See supra* note 5.