STATE OF NEBRASKA, APPELLEE, V. HAROLD LAMONT OTEY, APPELLANT.

464 N.W.2d 352

Filed January 11, 1991.    No. 90-289.

Jerry L. Soucie for appellant.

Robert M. Spire, Attorney General, and Sharon M. Lindgren for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ., and RONIN, D.J., Retired.

PER CURIAM.

In his second postconviction relief motion, Harold Lamont Otey, who was convicted of first degree murder and sentenced to death more than 12 years ago, asks this court to examine

issues which were, or could have been, raised in his direct appeal or in his first postconviction relief motion, both of which were decided adversely to him by this court.

While the issues raised in Otey's second postconviction relief motion are procedurally barred, we have, nevertheless, reweighed the aggravating and mitigating circumstances applicable in this death sentence case and find that Otey's latest postconviction motion to vacate his conviction of first degree murder and his death sentence is without merit.

The pertinent facts surrounding the murder are set forth in *State v. Otey*, 205 Neb. 90, 91-92, 287 N.W.2d 36, 38-39 (1979) (*Otey I*):

> The murder was committed during the early morning hours of June 11, 1977, in Omaha, Nebraska. The defendant entered the apartment of the victim and took a stereo set which he placed behind a garage nearby. This stereo was later identified and traced back to the defendant.

> The victim awakened when the defendant reentered the apartment. The defendant told the victim that he was going to rob her and that he would rape her. When she resisted he inflicted a knife wound across the top of her forehead. The defendant then sexually assaulted the victim. After the sexual assault the defendant and the victim went to the second floor of the apartment to get her money. There the defendant stabbed the victim a number of times inflicting deep wounds, struck her about the head with a hammer, and strangled her with a belt. The evidence shows that the victim died from the multiple wounds and strangulation inflicted upon her by the defendant.

> The defendant was apprehended in Florida in January 1978. On January 28, 1978, he was interviewed there by two Omaha police officers and after proper warnings gave a voluntary statement which was a full confession.

Following a jury trial, during which he was represented by a Douglas County public defender, Otey was convicted of first degree murder while in the perpetration of a first degree sexual assault, which is punishable by life imprisonment or a sentence of death. See Neb. Rev. Stat. §§ 28-303 (Reissue 1989) and

28-105 (Reissue 1985). Pursuant to Neb. Rev. Stat. § 29-2520 (Reissue 1975), a three-judge panel was convened to determine the sentence to be imposed on Otey.

Neb. Rev. Stat. § 29-2522 (Reissue 1989) now provides in substance that whether a defendant convicted of first degree murder receives life imprisonment or the death penalty shall be based upon three considerations: (1) whether sufficient aggravating circumstances exist to justify imposition of a sentence of death; (2) whether sufficient mitigating circumstances exist which approach or exceed the weight given to the aggravating circumstances; or (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Neb. Rev. Stat. § 29-2523 (Reissue 1989) defines aggravating and mitigating circumstances as follows:

(1) Aggravating Circumstances:

(a) The offender was previously convicted of another murder or a crime involving the use or threat of violence to the person, or has a substantial history of serious assaultive or terrorizing criminal activity;

(b) The murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime;

(c) The murder was committed for hire, or for pecuniary gain, or the defendant hired another to commit the murder for the defendant;

(d) The murder was especially heinous, atrocious, cruel, or manifested exceptional depravity by ordinary standards of morality and intelligence;

(e) At the time the murder was committed, the offender also committed another murder;

(f) The offender knowingly created a great risk of death to at least several persons;

(g) The victim was a law enforcement officer or a public servant having custody of the offender or another; or

(h) The crime was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of the laws.

(2) Mitigating Circumstances:

(a) The offender has no significant history of prior criminal activity;

(b) The offender acted under unusual pressures or influences or under the domination of another person;

(c) The crime was committed while the offender was under the influence of extreme mental or emotional disturbance;

(d) The age of the defendant at the time of the crime;

(e) The offender was an accomplice in the crime committed by another person and his participation was relatively minor;

(f) The victim was a participant in the defendant's conduct or consented to the act; or

(g) At the time of the crime, the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental illness, mental defect, or intoxication.

After an evidentiary hearing, the sentencing panel found that "the murder was committed 'to conceal the identity of the perpetrator of a crime' and that 'the murder was especially heinous, atrocious, cruel, and manifested exceptional depravity by ordinary standards of morality and intelligence.' " *Otey I, supra* at 96, 287 N.W.2d at 41. The panel found specifically that this latter aggravating circumstance existed in its entirety and to a great degree in this case. As will be discussed later, the panel's finding under § 29-2523(1)(d) that the murder "manifested exceptional depravity by ordinary standards of morality and intelligence" is the second prong of aggravating circumstance (1)(d) and constituted mere surplusage. The panel further found that none of the mitigating circumstances set out in § 29-2523(2) existed. After concluding that sufficient aggravating circumstances existed to justify the imposition of the death penalty, the panel sentenced Otey to death.

In connection with his direct appeal, Otey filed a pro se motion in this court (see transcript in *Otey I*) to have his trial counsel removed because the defendant "intends to raise substantial issues going to the question of the competency of trial counsel . . . ." Otey's motion was granted, and S.J.

Albracht was appointed to represent the defendant on his direct appeal to this court. Albracht filed a direct appeal brief and argued the case in this court. In his direct appeal to this court, Otey assigned as error that the trial court erred in

1. . . . failing to grant the defendant's Motion for Continuance filed on the 31st day of March, 1978.

2. . . . failing to sustain the plaintiff's Motion to have the defendant declared a sexual sociopath pursuant to the Reissue Revised Statutes of the State of Nebraska 29-2909.

3. . . . failing to declare Section 29-2519 et seq. Reissue Revised Statutes of Nebraska unconstitutional, null and void.

4. . . . imposing the death penalty under the circumstances of this case.

5. . . . failing to sustain the defendant's Motion in Limine prohibiting evidence and testimony of a subsequent assault, alleged to have taken place approximately thirty (30) days after the commission of the crime for which the defendant stood charged.

6. . . . failing to sustain defendant's Motion for Mistrial after the Court discharged a sworn juror.

Brief for appellant in *Otey I* at 3. There was no assignment of error that the evidence was insufficient to convict Otey.

More specifically, Otey argued on direct appeal that § 29-2523 was unconstitutional because, in part, the aggravating and mitigating factors are so vague and subjective as to make consistent and uniform application impossible. See brief for appellant in *Otey I* at 34-35. By way of example, Otey further asserted, "Men, including judges, may have widely varying conceptions as to what constitutes 'exceptional depravity.'" *Id.* at 35. Finally, Otey contended that the proportionality requirement prescribed in 1978 Neb. Laws, L.B. 711, was not being followed, since similar cases did not result in a sentence of death. See brief for appellant in *Otey I* at 51-53.

On December 18, 1979, this court affirmed Otey's conviction and sentence. See *Otey I*. The U.S. Supreme Court denied Otey's petition for a writ of certiorari on June 2, 1980. See *Otey*

*v. Nebraska*, 446 U.S. 988, 100 S. Ct. 2974, 64 L. Ed. 2d 846 (1980).

On September 23, 1980, Otey filed his first motion for postconviction relief in the district court for Douglas County. After conducting an evidentiary hearing, at which Otey's deposition was received in evidence, the motion was denied on September 24, 1981.

Otey appealed the trial court's denial of his first postconviction motion to this court, where he was represented by Michael L. Schleich. The assigned errors on the postconviction relief appeal were that the district court committed error in "1. . . . denying the defendant's Motion to Vacate Sentence and finding that the defendant received the effective assistance of counsel [and] 2. . . . denying the defendant the right to personally appear at the hearing on his Motion to Vacate Sentence." Brief for appellant in *State v. Otey*, 212 Neb. 103, 321 N.W.2d 453 (1982) (*Otey II*), at 2-3.

In connection with his first assignment of error, Otey claimed that he was denied effective assistance of counsel because his trial counsel failed to adequately prepare for trial, failed to request that all stages of the proceedings be recorded and transcribed, advised the jury that Otey would testify in his own behalf, and failed to object to prejudicial photographs. See brief for appellant in *Otey II* at 10-18.

On July 2, 1982, this court, after discussing each of the defendant's assigned errors and his arguments in connection therewith, affirmed the denial of Otey's first postconviction relief motion. See *Otey II*. Otey's second petition for a writ of certiorari was denied by the U.S. Supreme Court on December 6, 1982. See *Otey v. Nebraska*, 459 U.S. 1080, 103 S. Ct. 502, 74 L. Ed. 2d 641 (1982).

On December 15, 1982, Otey filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Nebraska. So far as is relevant here, among the 31 claims in that petition for habeas relief were:

> 21. The Petitioner was denied his rights under the Eighth and Fourteenth Amendments to the United States Constitution when the Sentencing panel found that the Petitioner had a significant history of prior criminal

activity and based that finding solely on charges against Petitioner [in New Jersey] of which he had not been convicted and uncorroborated admissions of the Defendant.

22. The Petitioner was denied his rights under the Eight [sic] and Fourteenth Amendments to the United States Constitution when the sentencing panel in Petitioner's case specifically limited its consideration of mitigating circumstances to those set forth in § 29-2523 R.R.S. Neb.

23. Nebraska Revised Statutes § 29-2523 is unconstitutional on its face and as applied in this case because it limits the mitigating factors that may be considered by the court to certain factors listed in the statute itself.

. . . .

28. The Nebraska death sentencing statutes, as interpreted by the Nebraska Supreme Court and applied in this case, are unconstitutional because the Nebraska Supreme Court has affirmed death sentences, including this one, despite the specific legislative command of LB 711 (R.R.S. Neb. § 29-2521.01, et seq.) that a death sentence be reversed if it is greater than the sentence imposed in other cases with similar circumstances so that Petitioner's sentence was imposed in contravention of the applicable statutory authority, in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States. . . .

29. The Nebraska death sentencing statute (Neb. Rev. Stats. § 29-2523) is unconstitutionally vague in its enumeration of aggravating and mitigating circumstances, including such aggravating circumstances considered in this case as the existence or nonexistence of a "substantial history of serious assaultive or terrorizing criminal activity" and "heinous, atrocious and cruel", neither of which requires sufficient constraint on the sentencing decision to comport with the requirements of the Eighth and Fourteenth Amendments to the Constitution of the United States.

. . . .

31. The death penalty is in fact administered and applied discriminatorily in the United States and in the State of Nebraska against poor males who are accused of killing caucasians and upon the sole ground of race, poverty and sex, and Petitioner's sentences of death were imposed pursuant to this pattern and practice, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

*Otey v. Black*, No. CV82-L-665, petition for writ of habeas corpus at 5-7 (D. Neb. Dec. 15, 1982).

In an exhaustive and detailed report and recommendation, the federal district court's magistrate determined that although claims regarding the consideration of the pending New Jersey charges, statutory limitation of mitigating factors, and discriminatory imposition of the death penalty on minority males had not been presented to the Nebraska Supreme Court, state court remedies were nonetheless exhausted. See *Otey v. Black*, No. CV82-L-665, U.S. Magistrate's report and recommendation at 1-2 (D. Neb. Feb. 3, 1987). He then determined that Otey had waived some of those claims and that he was not actually prejudiced by the Nebraska Supreme Court's failure to address the merits of those claims. *Id.* at 13-19. See, *Wainwright v. Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); *Smittie v. Lockhart*, 843 F.2d 295 (8th Cir. 1988) (explaining that a federal court may not entertain a federal habeas corpus action if state court remedies are not exhausted unless the petitioner shows cause and prejudice). With respect to Otey's arguments concerning the proportionality review and vagueness of § 29-2523(1)(d), the magistrate determined that the claims had been presented to the Nebraska Supreme Court and that they had no merit. See *Otey v. Black*, No. CV82-L-665, U.S. Magistrate's report and recommendation, *supra* at 40-44. The U.S. District Court for the District of Nebraska adopted the report and recommendation by the magistrate and denied Otey's petition for habeas corpus relief. See *Otey v. Grammer*, No. CV82-L-665, memorandum of decision (D. Neb. Apr. 7, 1987).

On October 13, 1988, a panel of the U.S. Court of Appeals for the Eighth Circuit affirmed the district court's denial of

Otey's petition. See *Otey v. Grammer*, 859 F.2d 575 (8th Cir. 1988). In that opinion, the panel discussed at length only Otey's ineffectiveness of counsel claims which he had previously raised in his first postconviction relief motion before this court. Parenthetically, we note that Otey was cognizant of any ineffectiveness of trial counsel when he requested, and was granted, different counsel to represent him at the time of his direct appeal. Concerning Otey's other assertions, the U.S. Court of Appeals panel concluded: "We have carefully reviewed the other issues raised by Otey and find them to be without merit. They have been thoroughly ventilated by the Magistrate in his lengthy and comprehensive report and recommendation and do not warrant further discussion here." *Id*. at 580. The court of appeals refused Otey's petition for rehearing en banc on March 14, 1989. See *Otey v. Grammer*, 869 F.2d 1137 (8th Cir. 1989). Otey's third petition for a writ of certiorari was denied by the U.S. Supreme Court on June 28, 1990. See *Otey v. Grammer*, _____ U.S. _____, 110 S. Ct. 3288, 111 L. Ed. 2d 796 (1990).

Utilizing the provisions of Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 1989), Otey filed his second postconviction motion in the district court for Douglas County, Nebraska, on June 22, 1989. He asserted the following in that postconviction motion:

1. Inaccurate and incorrect information was contained in the presentence report and was relied upon by the sentencing panel in imposing the sentence of death, in violation of U.S. Const. amends. VIII and XIV and Neb. Const. art. I, §§ 1, 3, and 12.

2. The death penalty is being applied to Otey in violation of the separation of powers clause set forth in Neb. Const. art. II because of the judicial branch's refusal to follow and apply the requirements under 1978 Neb. Laws, L.B. 711.

3. The death sentence statutes, as applied to Otey, were in violation of U.S. Const. amends. VIII and XIV because at the time of Otey's sentencing hearing, the mitigating factors available to Otey were expressly limited to the seven factors set forth in § 29-2523(2).

4. The death sentence imposed on Otey is unconstitutional because the sentencing panel relied upon the aggravating

circumstance prescribed in § 29-2523(1)(d), and said aggravating circumstance is unconstitutionally vague, in violation of U.S. Const. amends. VIII and XIV and Neb. Const. art. I, §§ 1, 3, and 12.

5. The sentencing panel used an improper and unconstitutional standard in depriving Otey of the benefit of the mitigating circumstance set forth in § 29-2523(2)(c) by focusing solely on § 29-2523(2)(g) to dismiss his psychiatric evidence, in violation of U.S. Const. amends. VIII and XIV.

6. The sentence of death is unconstitutional under Neb. Const. art. I, § 1, as amended by initiative 403, and the State may not deprive a person of his or her life.

7. The death penalty as administered in Nebraska and imposed on Otey is done in an ad hoc, arbitrary, capricious, and freakish manner, in violation of U.S. Const. amends. VIII and XIV and Neb. Const. art. I, §§ 1, 3, and 12. Death sentences are systematically and disproportionately imposed on indigent minority male defendants accused of killing white women.

Without appointing counsel or granting an evidentiary hearing, the district court denied the motion on February 23, 1990. See § 29-3001 and parts III and IV of this opinion. On appeal to this court, Otey, represented by Jerry Soucie, in substance presents the same arguments listed above, except that he omits in his assignments of error and does not brief the contentions set forth in numbers five and six. Otey contends in his sixth and seventh assignments of error that the district court erred in (1) failing to appoint counsel to represent him, under the terms of § 29-3004, and (2) refusing to hold an evidentiary hearing on the motion.

## I. INTRODUCTION

One moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or federal Constitution, causing the judgment against the movant to be void or voidable. *State v. Nearhood*, 233 Neb. 767, 448 N.W.2d 399 (1989). See, also, § 29-3001. The movant has the burden of establishing the basis for such relief, and a conviction will not be set aside in the absence of a showing of actual prejudice. *Nearhood, supra.*

The findings of the postconviction hearing court will not be disturbed unless they are clearly wrong. *State v. Thomas, ante* p. 553, 462 N.W.2d 862 (1990).

## II. PROCEDURAL BAR

"A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased." *Nearhood, supra* at 771, 448 N.W.2d at 403. A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed. *State v. Luna*, 230 Neb. 966, 434 N.W.2d 526 (1989); *State v. Nance*, 227 Neb. 581, 418 N.W.2d 598 (1988). See, also, *State v. Meis*, 233 Neb. 355, 445 N.W.2d 610 (1989) (determining that second postconviction action not barred because grounds relied upon did not exist at the time of the filing of the first motion for postconviction relief). Judicial economy and finality of the litigation are evident policy considerations supporting the foregoing rule. Furthermore, in the absence of the rule, a defendant could eternally postpone a death sentence in a case such as this by the simple artifice of piecemeal litigation.

### 1. PENDING CHARGES

In determining not to apply the "no significant history of prior criminal activity" mitigating factor prescribed in § 29-2523(2)(a), the sentencing panel, Otey contends, improperly considered pending charges against him in New Jersey. A letter, dated February 27, 1989, from the Monmouth County, New Jersey, prosecutor stating that the New Jersey charges would be dismissed was attached to Otey's second postconviction motion. At oral argument, Otey, through counsel, asserted that the issue could not have been raised any earlier because the charges were not dismissed until 1989.

The issue of whether the sentencing panel could consider the pending charges is an issue that could have been raised in Otey's direct appeal. It was not necessary that the charges be dismissed before the issue was raised. Because Otey could have raised this issue on direct appeal and the grounds existed at the time of the first postconviction hearing, he is barred from raising this issue

in a subsequent postconviction action.

Even if we were to assume that the sentencing panel should have completely disregarded the charges levied against the defendant in New Jersey, Otey would still not be entitled to have his death sentence set aside. The sentencing panel specifically found that the New Jersey charges did not support any aggravating circumstance. Similarly, the sentencing panel held that Otey's statements that he had committed statutory rape and from 10 to 13 other rapes and terrorized victims could not be used to support any aggravating circumstance. As stated, whether the New Jersey charges or the defendant's other noncharged bad conduct could be utilized to deprive Otey of mitigating circumstance § 29-2523(2)(a) are issues that could have been raised in Otey's direct appeal, but they were not.

Completely disregarding the New Jersey charges and weighing anew the aggravating and mitigating circumstances in this case, as permitted by *Clemons v. Mississippi*, ____ U.S. ____, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990), and *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), we conclude that there are present in this case two aggravating circumstances, § 29-2523(1)(b) and (1)(d), which have been proved beyond a reasonable doubt, and one mitigating circumstance, § 29-2523(2)(a). We further find beyond a reasonable doubt that the existing aggravating circumstances (1)(b) and (1)(d) outweigh mitigating circumstance (2)(a) to such a degree that Otey's death sentence remains appropriate and is not arbitrary.

In reweighing the aggravating and mitigating circumstances in this case, we have been guided by the rules of law reiterated in *State v. Victor, supra* at 794-95, 457 N.W.2d at 447:

The balancing of aggravating circumstances against mitigating circumstances is not merely a matter of number counting but, rather, requires a careful weighing and examination of the various factors. *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989); *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986). As we observed in *State v. Stewart*, 197 Neb. 497, 518, 250 N.W.2d 849, 862 (1977), quoting *State v. Dixon*, 283 So. 2d 1 (Fla. 1973):

" 'It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere

counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present. Review by this Court guarantees that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case. No longer will one man die and another live on the basis of race, or a woman live and a man die on the basis of sex. If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great. Thus, the discretion charged in Furman v. Georgia, [408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)], can be controlled and channeled until the sentencing process becomes a matter of reasoned judgment rather than an exercise in discretion at all.' "

Section 29-2523(1)(b) provides that when "[t]he murder was committed in an apparent effort to conceal the commission of a crime, or to conceal the identity of the perpetrator of a crime," that constitutes an aggravating circumstance. The sentencing panel found that the evidence established beyond a reasonable doubt that the victim was murdered to conceal the identity of the perpetrator of a crime. In support of that finding of this aggravating circumstance, the sentencing panel found that Otey entered the rear door of the victim's house while either committing a burglary or making a felonious entry, that a stereo was stolen from the residence, and that the defendant sold this stereo to third parties. The panel concluded that it was established beyond a reasonable doubt that these crimes were committed. The panel further found that Otey's admission that he raped the victim was corroborated by the testimony of the examining pathologist and was proved beyond a reasonable doubt, and found that the defendant admitted that he had cut the victim across the forehead while she initially resisted his advances and before the rape and that this conduct was corroborated and proved beyond a reasonable doubt by the pictures of the victim and the testimony of the examining

pathologist. See the order of sentence in the transcript to *Otey I*. We agree that this aggravating circumstance, set forth in § 29-2523(1)(b), exists and was proved beyond a reasonable doubt in Otey's case.

In applying aggravating circumstance § 29-2523(1)(d), the sentencing panel found, among other things, (1) that the victim's murder was especially heinous, atrocious, and cruel; (2) that it involved torture, sadism, and sexual abuse and the imposition of extreme suffering; and (3) that it was a torture murder. In support of its finding that the aggravating circumstance § 29-2523(1)(d) exists, the sentencing panel recited in its sentencing order:

> The evidence in this case shows that defendant was out drinking with friends on June 10, 1977. In the early morning hours of June 11, defendant, while walking to his place of residence at Ak-Sar-Ben race track, looked through the window of the victim's house. He saw the victim sleeping on a sofa on the first floor of the house. Defendant entered the rear door of the house, went upstairs and stole a stereo which he carried outside.

> Defendant then re-entered the house and again went upstairs. On his way back down, the victim awakened and confronted defendant. Defendant told the victim that he was going to rob her. When the victim responded that she didn't have much money, defendant told her he was going to rape her. The victim then began to fight back at defendant. Defendant knocked her onto the sofa and pulled out his knife. The knife had an overall length of 11 inches with the blade being 6 inches in length and tapering in a slightly curved fashion from a width of 3/4 inch at the handle to a point. The defendant, in his own words, the "*** just took the knife and cut her on the forehead to show that I wasn't kidding." After this slash across the victim's forehead, again in the defendant's words, "She was easy to get along with, you know.", and "*** the rest was easy ***."

> Defendant then proceeded to rape the victim downstairs on the sofa, both vaginally and anally as shown by sperm in the vagina and anus. After defendant

finished raping the victim, he inquired if she had any money. The victim told defendant that she had a little bit of money upstairs. Thereupon, the defendant forced the victim to walk upstairs. The victim at this time was completely unclothed and was bleeding badly from the cut on her forehead, and left a trail of blood up the steps.

Upstairs, the victim gave defendant what money she had, and then started "crying and stuff."

The defendant stated that he then started stabbing the victim, who then pleaded with defendant to kill her. [The panel found the victim's plea was one for mercy.] In defendant's words, "I figured, well, it went that far, why not, so, I stabbed her or whatever." According to the pathologist's report, there were at least 15 major stabbed and lacerated areas, not counting the small lacerations on the hands and abdomen. Two of the stab wounds penetrated the victim's body two inches into her liver, indicating a total penetration of five inches. Examination of the photographs introduced at the trial, and the photographs introduced at the sentencing hearing, shows stabs and lacerations all over the victim's body including a stab wound at the base of the skull in the rear, laceration of the left breast, laceration around both eyes, lacerations on the victim's back, lacerations to the legs and knees, lacerations to the arms, and lacerations to the abdomen.

The photographs also show the victim's body covered with blood — with some of the blood flowing vertically down the body and some flowing horizontally around the body, establishing the fact that the victim was bleeding while erect and bleeding while lying on the floor.

In addition to the stabbings, defendant stated that he then took a hammer from the top of the victim's dresser and hit the victim on the head four or five times. The examining pathologist testified that his examination showed one wound in the head resulting from a blow with a blunt instrument, causing internal hemorrahging [sic].

Defendant then strangled the victim with her own belt that was on the bed. This fact was also confirmed by the pathologist in his examination of the victim's larynx.

The cause of the victim's death was attributed to all of the factors set out above. Dr. Blaine Roffman, who conducted the autopsy, concluded, "That the cause of death was attributed to all of these findings as an entity, the stab wounds, the trauma to the head and the trauma to the larynx all contributed to the cause of death." *The panel finds that the victim died a substantial period of time after the inital* [sic] *stabbing.* [Emphasis supplied.]

The appearance of the victim's body, after defendant had murdered her, is possibly best described in the defendant's own words, when in response to an inquiry why he had covered her face, he said, "I couldn't stand the sight."

See transcript in *Otey I.*

In his second postconviction relief motion, the defendant has not challenged the underlying factual findings of the sentencing panel but, rather, challenges the constitutionality of aggravating circumstance (1)(d).

Regarding § 29-2523(1)(d), in *State v. Moore*, 210 Neb. 457, 470, 316 N.W.2d 33, 41 (1982), this court stated:

Aggravating circumstance (1)(d) of § 29-2523 literally, and as interpreted by this court, describes in the disjunctive two separate circumstances which may operate in conjunction with or independent of one another. The first circumstance is that the murder was especially heinous, atrocious, or cruel. We have said that this circumstance is directed to the "pitiless crime which is unnecessarily torturous to the victim" and to cases where torture, sadism, or the imposition of extreme suffering exists. *State v. Stewart*, 197 Neb. 497, 250 N.W.2d 849 (1977); *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977). . . . The second circumstance pertains to the state of mind of the actor. In *State v. Stewart, supra,* we said the second instance indicates a situation "where depravity is apparent to such an extent as to obviously offend all standards of morality and intelligence" . . . and in *State v. Holtan,* 197 Neb. 544, 250 N.W.2d 876 (1977), it indicates a state of mind "totally and senselessly bereft of any regard for human life" (syllabus of the court).

In *State v. Ryan*, 233 Neb. 74, 142, 444 N.W.2d 610, 652 (1989), we concluded:

> [T]his court has adopted a limiting construction on aggravating circumstance (1)(d), as shown in cases extending from 1977 to 1986. We have held that "especially heinous, atrocious, or cruel" is limited to cases where "torture, sadism, or the imposition of extreme suffering exists," *State v. Moore, supra* at 470, 316 N.W.2d at 41, or where the murder was preceded by acts "performed for the satisfaction of inflicting either mental or physical pain or that pain existed for any prolonged period of time," *State v. Hunt*, [220 Neb. 707, 725, 371 N.W.2d 708, 721 (1985)].

As recently as *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990), we reiterated that the State needs to prove only the first prong of § 29-2523(1)(d) for that aggravating circumstance to exist, i.e., that the murder must be "especially heinous, atrocious, cruel."

We further declared in *State v. Victor, supra* at 788, 457 N.W.2d at 444:

> We conclude, as we did in *State v. Ryan, supra*, and *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984), that this court has adopted such a narrow construction of § 29-2523(1)(d) as to render the first prong of the Nebraska statute sound and in full compliance with the U.S. Constitution. See, also, *Harper v. Grammer*, 895 F.2d 473 (8th Cir. 1990); *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990). Such a narrow construction does not lead to arbitrary results.

It is painfully evident that the unchallenged facts of this case, hereinbefore recited, establish beyond a reasonable doubt that the victim's death falls squarely within the limited construction that this court has placed upon the first prong of § 29-2523(1)(d). We consider the sentencing panel's finding in regard to the second prong of § 29-2523(1)(d) harmless error beyond a reasonable doubt and, at most, mere surplusage, since only the first prong of (1)(d) need be proved beyond a reasonable doubt, and was so proved, for aggravating circumstance (1)(d) to apply.

## 2. Limitation of Mitigating Circumstances

Otey next claims that, at the time he was sentenced in 1978, a sentencing court was limited to the express mitigating factors set forth in § 29-2523. He argues that this prevented the sentencing panel from giving consideration to nonstatutory mitigating factors, such as his upbringing and psychiatric history.

In *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978), a plurality of the U.S. Supreme Court held that the 8th and 14th amendments require that the sentencing court, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. In his brief, Otey acknowledges that *Lockett* was decided scarcely 13 days after he was sentenced to death. On January 15, 1980, in *State v. Holtan*, 205 Neb. 314, 318-19, 287 N.W.2d 671, 674 (1980), this court declared:

> Nothing in our statute precludes the court from considering *all* aspects of the defendant's character. To the extent there may be any question we now hold that the trial court shall . . . consider any matter relevant to the imposition of the sentence and receive any such evidence which the court deems to have probative value as to the character of the defendant and shall consider them as a mitigating factor . . . .

Assuming arguendo, but not deciding, that the sentencing panel was limited to the specific mitigating factors enumerated in § 29-2523(2) and assuming arguendo that the issue could not have been raised on direct appeal, it is clear that at the time Otey filed his first postconviction action on September 23, 1980, the grounds relied upon herein by the defendant existed. Otey did not raise that issue in his first postconviction relief motion. This claim is barred under this state's procedural rules.

## 3. Discriminatory Application

The essence of this claim is that an indigent minority male who is convicted of murdering a Caucasian woman is more likely to be sentenced to death than a defendant who is

Caucasian or of the same race as the victim. This issue could have been presented on direct appeal. It was not. Furthermore, the same issue could have been raised, but was not, in Otey's first postconviction relief motion. The procedural bar is likewise applicable to this claim.

But even if we were to reach the merits of this claim, Otey could not prevail. Otey merely argues crude statistical data. Such an argument and data do not support his proposition. See *McCleskey v. Kemp*, 481 U.S. 279, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987).

### 4. OTHER CLAIMS

Otey asserts that this court, in violation of Neb. Const. art. II, has refused its statutory obligation to conduct a proportionality review of capital cases as mandated in 1978 Neb. Laws, L.B. 711, now codified as Neb. Rev. Stat. §§ 29-2521.01 to 29-2522 and 29-2524 (Reissue 1989). This issue was raised on direct appeal. See brief for appellant in *Otey I* at 51-53. Indeed, this court, in *Otey I*, expressly stated after making the proportionality analysis, "We find the sentence of death imposed in this case is not excessive or disproportionate to the penalty imposed in other cases, considering both the crime and the defendant." *Otey I* at 96, 287 N.W.2d at 41.

Section 29-2521.03 requires the Supreme Court to determine the propriety of the death sentence in a case in which it has been imposed by comparing the sentence with previous cases involving the same or similar circumstances.

We have determined that the purpose of that statute is to ensure that no sentence imposed shall be greater than those imposed in other cases with the same or similar circumstances and that the review should include only those cases in which the death penalty was imposed. *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990). See, also, *State v. Joubert*, 224 Neb. 411, 399 N.W.2d 237 (1986); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986).

Not only was this issue raised on direct appeal, but this court has again compared the facts and circumstances of this case with those of all the applicable cases in which the death penalty has been imposed. We find beyond a reasonable doubt that the

sentence imposed in this case is no greater than, nor disproportionate to, the sentence imposed in any other case with the same or similar circumstances.

Otey next argues that aggravating circumstance § 29-2523(1)(d) is unconstitutionally vague on its face. This issue was raised on direct appeal. See brief for appellant in *Otey I* at 34-35.

In an apparent attempt to avoid the procedural bar, Otey seems to argue that the language embodied in § 29-2523(1)(d) was narrowed by appellate review after his direct appeal and first postconviction hearing and that he was not given the benefit of this later interpretation. At the time of Otey's direct appeal, a limiting construction had already been applied to the first prong of § 29-2523(1)(d). In 1977, we held that the "especially heinous, atrocious, cruel" language is directed to the "pitiless crime which is unnecessarily torturous to the victim," *State v. Stewart*, 197 Neb. 497, 522, 250 N.W.2d 849, 864 (1977), and to murders involving "torture, sadism, sexual abuse, or the imposition of extreme suffering," *State v. Rust*, 197 Neb. 528, 538-39, 250 N.W.2d 867, 874 (1977). This was the very test that the sentencing panel applied.

In any event, these two claims are procedurally barred, since the issues were previously raised in Otey's direct appeal.

### III. APPOINTMENT OF COUNSEL

"The district court *may* appoint not to exceed two attorneys to represent the prisoners in all proceedings under sections 29-3001 to 29-3004." (Emphasis supplied.) § 29-3004 (Cum. Supp. 1990). Otey argues that the district court abused its discretion in failing to appoint an attorney.

"Where the record fails to present a justiciable issue of law and fact to the court in a postconviction action, it is not an abuse of discretion to fail to appoint counsel for an indigent." *State v. Rehbein*, 235 Neb. 536, 545, 455 N.W.2d 821, 827 (1990). As the previous discussion demonstrates, since Otey's claims are procedurally barred and without merit, there was no justiciable issue of law or fact in this action. Furthermore, as a matter of federal constitutional law, neither the eighth amendment nor the due process clause requires states to

appoint counsel for indigent death row inmates seeking state postconviction relief. *Murray v. Giarratano,* 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed. 2d 1 (1989).

## IV. EVIDENTIARY HEARING

In his final assignment of error, Otey complains of the district court's failure to conduct an evidentiary hearing on his postconviction motion.

> " 'A court is not required to grant an evidential hearing on a motion for postconviction relief which alleges only conclusions of law or fact; nor is an evidential hearing required under the Nebraska Postconviction Act when (1) the motion for postconviction relief does not contain sufficient factual allegations concerning a denial or violation of constitutional rights affecting the judgment against the movant, or (2) notwithstanding proper pleadings of facts in a motion for postconviction relief, the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or voidable.' "

*Rehbein, supra* at 538-39, 455 N.W.2d at 824.

As the claims raised by Otey were or could have been litigated in his direct appeal or were grounds which existed at the time his first postconviction motion was filed and have no merit, he has failed to show a denial or violation of his constitutional rights causing the judgment against him to be void or voidable.

Otey has been given fair and ample opportunity to present his claims, both in the courts of this state and in the federal courts. Justice demands finality of the litigation. Otherwise, Otey could continue his appeals in perpetuity, making a mockery of his death sentence. The Legislature has dictated capital punishment to be the public policy of this state.

The issues raised in Otey's second postconviction motion are without merit. The judgment of the trial court is affirmed.

AFFIRMED.