Tommy BURNSIDE, Appellant,

v.

Carl WHITE, Appellee.

No. 84–1244.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1984.

Decided April 24, 1985.

Rehearing Denied May 31, 1985.

Janet Young, St. Louis, Mo., for .appellant.

George Cox, Jefferson City, Mo., for appellee.

Before BRIGHT, McMILLIAN, BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Petitioner Burnside appeals to this Court the denial by the District Court of his petition for habeas corpus. Burnside originally was sentenced in 1974 to a sixty-year term with the Missouri Department of Corrections. Since 1974, while incarcerated, he has twice been convicted of assault and has been sentenced to additional terms of four and two years, which terms are to run concurrently, consecutive to his sixty-year term, for a total of sixty-four years.

On April 8, 1983, Burnside was denied parole by the Missouri Board of Probation and Parole (Board) under newly adopted Mo.Rev.Stat. § 217.690:

> When in its opinion there is reasonable probability that an inmate of a state correctional institution can be released without detriment to the community or to himself, the board *may in its discretion* release or parole such person. (emphasis added).

At the time Burnside was originally sentenced, however, Mo.Rev.Stat. § 549.261 was in effect:

> When in its opinion there is reasonable probability that the prisoner can be released without detriment to the community or to himself, the board *shall* release or parole any person confined in any correctional institution administered by state authorities .... (emphasis added).

Burnside claims that the Board's determination to deny him parole under Mo.Rev. Stat. § 217.690 violates Article I, Section 10 of the United States Constitution[1] in two ways. First, Burnside claims that § 217.-690 is an *ex post facto* law because the reason given by the Board not to release him under § 217.690 would have been impermissible under § 549.261.[2] Second, Burnside claims that § 217.690 is an *ex post facto* law because it leaves to the Board's discretion the decision to release him if it determines there is a reasonable probability that release would be without detriment to himself or the community, whereas under § 549.261, the Board would

1. The first paragraph of Article I, Section 10 of the United States Constitution reads as follows:
No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.

2. The Board denied Burnside's application for parole for the following reason:

Because of the seriousness of the offenses of which you were convicted and are presently serving time, in that the victim was kidnapped, robbed and excessive force was used in causing her to submit to rape, the Board believes that release at this time would depreciate the seriousness of the offenses committed and it is their decision to schedule you for a reconsideration hearing in March, 1986, with an interim review in March, 1985. Appendix at 22.

have been required to release him if it so determined. Burnside commenced this habeas action after he had exhausted his claims in the state courts.

## I.

Respondent contends that we need not reach the merits of this case for either of two reasons. First, respondent argues that under Missouri law Burnside has no right to challenge the wisdom of the Board's decision not to release him, and thus that Burnside may not challenge that decision at all in the federal courts. This argument misses the point of Burnside's petition. A reading of Burnside's brief demonstrates that Burnside seeks not to litigate the wisdom of the Board's decision not to release him, but rather to challenge on constitutional grounds the legitimacy of Mo.Rev.Stat. § 217.690 as applied to him. The role of this Court in the present case is not to make the determination whether we, sitting as the Board of Parole, would have chosen to release Burnside, but rather to determine whether the decision not to release Burnside was made in accordance with the demands of the Constitution. This Court plainly has both the power and the duty to undertake that review. *Cf. Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Marbury v. Madison,* 1 Cranch 137, 2 L.Ed. 60 (1803); *Heirens v. Mizell,* 729 F.2d 449, 454 (7th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 147, 83 L.Ed.2d 85 (1984).

Second, Respondent argues that Burnside is precluded from bringing this action by the decision of this Court in *Brown v. Vermillion,* 593 F.2d 321 (8th Cir.1979). *Brown* upheld the dismissal of Brown's civil rights action, which requested the same relief for Brown individually as that requested by the certified class (of which Brown was a member) in *Williams v. Missouri Board of Probation and Parole,* 661 F.2d 697 (8th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 855 (1982), because "Brown will be bound by the result in *Williams* as a member of the class." *Brown,* 593 F.2d at 323. The class in *Williams* had sought relief from Board

procedures that denied them the process they were due under Mo.Rev.Stat. § 549.-261. *Williams* was declared moot by the district court on remand following the adoption of Mo.Rev.Stat. § 217.690 by the Missouri legislature. Respondent argues that since Burnside was also a member of the class in *Williams,* he should be bound by the result in *Williams* and his habeas petition should be dismissed.

We believe that respondent's argument is without merit. *Brown* concerned the dismissal of an action brought under 42 U.S.C. § 1983, while the present case is a habeas action. While a plaintiff in a § 1983 action may, in a proper case, be bound by a determination on the merits by another court, "a decision in another case is not res judicata as to a habeas proceeding." *Heirens v. Mizell,* 729 F.2d at 456 (quoting *Warren v. McCall,* 709 F.2d 1183, 1184 n. 4 (7th Cir.1983)); *see also Allen v. McCurry,* 449 U.S. 90, 98 n. 12, 101 S.Ct. 411, 417 n. 12, 66 L.Ed.2d 308 (1980).

A petition for habeas corpus may be dismissed if it constitutes an abuse of the writ. *See* 28 U.S.C. § 2254 Rule 9(b). An abuse of the writ may consist of relitigating an issue already decided in a previous habeas action, or in bringing a second petition, after failing to bring a ground for federal collateral relief to the attention of the court in the first petition, in the hope of being granted two hearings rather than one. *See Rose v. Lundy,* 455 U.S. 509, 521, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (plurality opinion), 533, 536–37, 102 S.Ct. 1211, 1212–13 (Brennan, J., concurring in part and dissenting in part). Respondent asks us to dismiss Burnside's petition merely because he requests relief similar to that requested by the class in *Williams.* However, plaintiffs in *Williams* requested such relief under the due process clause; that claim was rendered moot when the statute under which they sought to prevail was superseded. Burnside has requested relief under the *ex post facto* clause. The district court that dismissed *Williams* never considered the question central to this ap-

peal: whether Mo.Rev.Stat. § 217.690 is an *ex post facto* law as applied to Burnside. There is no allegation by the respondent that Burnside deliberately failed to bring to the attention of the *Williams* court the *ex post facto* issue. Thus, we do not believe that *Brown* precludes Burnside from bringing the present action.

## II.

■■■ The *ex post facto* provision in Article I, Section 10 of the Constitution forbids a state from enacting any law that imposes punishment for an act which was not punishable at the time it was committed, or that imposes punishment for an act additional to that previously prescribed. The provision ensures "that legislative Acts give fair warning of their effect" and also "restrain[s] arbitrary and potentially vindictive legislation." *Weaver v. Graham*, 450 U.S. at 28–29, 101 S.Ct. at 963–964. Thus, a law need not impair a vested right to violate the *ex post facto* provision; the presence or absence of an affirmative, enforceable right is not relevant to a determination as to whether a law is *ex post facto*. *Id.* at 29–30, 101 S.Ct. at 964–965. Rather, only "two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29, 101 S.Ct. at 964. We therefore turn to a consideration of retrospectivity and disadvantage.

Initially, we are faced with respondent's contention that § 217.690 cannot be *ex post facto* because under Missouri law, parole and parole eligibility are not appended to or a part of the sentence. This argument— that when parole, under state law, is not part of the original sentence, the applica-

tion of a new parole statute is not retrospective—was made by the respondent in *Weaver* to the Supreme Court and was specifically rejected in that case by a unanimous Court. *See* 450 U.S. at 31–32, 101 S.Ct. at 965–966. There is no question that a new parole statute may alter the consequences attached to a crime for which a prisoner already has been sentenced; to the degree that a statute does so, it has retrospective effect. Under § 549.261, once the Board determined that a prisoner could be released without detriment to himself or the community, that prisoner had a justifiable expectation of parole; under § 217.690, that prisoner has only the possibility of parole at the discretion of the Board. We believe, therefore, that § 217.-690 is retrospective as applied to Burnside, and we turn to a consideration of disadvantage.

"[A] retrospective law [may be] constitutionally applied to petitioner only if it is not to his detriment." *Id.* at 33, 101 S.Ct. at 966. Burnside argues that the application of § 217.690 rather than § 549.261 to his case is detrimental to him in two ways. First, he contends that the reason given by the Board not to release him under § 217.-690—that it would depreciate the seriousness of his crime—would not have been a permissible reason for denying him parole under § 549.261 and thus that the Board would have been required to release him under § 549.261. Second, he contends that the new statute leaves to the Board's discretion the decision to release him if it determines there is a reasonable probability that his release would be without detriment either to the community or himself, whereas under the old statute, the Board was required to release him if it so determined. We consider each contention in turn.[3]

---

**3.** Burnside also alleges that the Board violated the due process clause of the Constitution by denying him access to adverse information in his parole file. Burnside does not base his assertion that he was denied due process on a contention that current Missouri statutes, rules, regulations, or policy pronouncements presently create a liberty interest protectible by due process. Rather, he contends that because § 217.-

690 is *ex post facto* as applied to him, his due process rights must be determined under Mo. Rev.Stat. § 549.261, and that under § 549.261, he would have been entitled to be advised of adverse information in his parole file. *See Williams*, 661 F.2d at 700.

Because we reject each of Burnside's claims that § 217.690 is a retrospective application of a

■ Burnside's first claim is that the reason given by the Board not to grant him parole—that to release him would depreciate the seriousness of his offense—though a permissible reason for denying parole under § 217.690, was an impermissible reason for denying parole under § 549.261. Burnside concludes that the application of § 217.690 to him was, for this reason, detrimental. We do not agree with Burnside's conclusion that the seriousness of his offense was an impermissible reason for denying parole under § 549.261.

Burnside acknowledges that a regulation adopted under § 549.261 also permitted the Board to deny parole based on the serious nature of the offense. Burnside argues, however, that even if the Board was considering the seriousness of the crime as a factor under the rules and regulations it had adopted under § 549.261, it was doing so improperly because any rule adopted by the Board that allowed it to consider this factor was necessarily in conflict with the legislative enactments governing parole.[4]

■ We note that while the validity of administrative rules and regulations is presumed in Missouri, a rule that conflicts with the sense and meaning of a statute is invalid. *See Osage Outdoor Advertising v. State Highway Commission*, 624 S.W.2d 535, 537 (Mo.Ct.App.1981). In *Osage*, a state statute required the State Highway Commission to issue permanent permits for highway billboards while another statute required the Commission to collect a biennial inspection fee. The Commission had promulgated a rule requiring advertisers to apply for inspections and, in the event of an inadequate application, authorizing itself to void the applicant's permit. The Missouri Court of Appeals, noting that the Highway Commission had been given only narrow discretion in promulgating rules, held that the Commission exceeded the power it had been given when it promulgated a rule authorizing itself to void permanent permits it had been required by statute to authorize.

In the present case, Burnside argues that the rule permitting the Board to consider the seriousness of the applicant's offense in denying an application for parole conflicted with Mo.Rev.Stat. § 549.261, which provided that a prisoner be paroled when the prisoner can be released without detriment to himself or to society and with § 549.291, which provided that parole provisions be construed liberally so that parole would be granted when the Board was satisfied that release would be consistent with the needs of public safety and the prisoner's own welfare. Respondent answers that in adopting regulations under § 549.261, the Board did consider the needs of public safety, and determined it to be

penal statute to his detriment, we need not consider whether Burnside's due process rights under § 549.261 were violated. We also express no opinion on the issue of whether the Board's refusal under § 217.690 to advise a prisoner of adverse information in the prisoner's parole file could, in and of itself, constitute the *ex post facto* application of a penal statute since Burnside did not raise this claim. *See id.* (under § 549.261 prisoner entitled to be advised of adverse information in his parole file).

4. Respondent asserts that this argument in favor of Burnside's claim that § 217.690 is *ex post facto* was never made to the state courts and that Burnside's petition must therefore be dismissed under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 as a mixed petition of exhausted and unexhausted claims. We believe respondents characterization of this part of Burnside's argument as an "unexhausted claim" is mistaken. Burnside apparently did contend from the beginning that the reason given by the

Board for denying him parole was not a proper one under § 549.261. Respondent has admitted that Burnside's claim that the reason given for denying him parole was improper under § 549.-261 has been exhausted.

While *Rose v. Lundy* prescribes that a federal court may not consider claims never exhausted in the state courts, it does not demand that for exhaustion to have occurred, a petitioner acting pro se have presented to the state courts every argument and citation in support of that claim with sophistication equal to that later employed by appointed counsel. Respondent concedes that the Missouri Supreme Court considered on the merits Burnside's assertion that the reason given for denying him parole was an improper one. That Court therefore had a fair opportunity to correct any constitutional error. *See Heirens v. Mizell*, 729 F.2d at 456–57. It rejected Burnside's claim. We believe that Burnside's claim has properly been exhausted.

consistent with the needs of public safety to effectuate deterrence by denying early release to prisoners convicted of serious crimes.[5] When we consider that under §§ 549.261 and 549.291, the Board had extremely broad discretion in determining when a prisoner should be paroled and was specifically required to consider the needs of public safety, we cannot conclude that a regulation permitting the Board to consider the seriousness of the crime in denying parole is inconsistent with those statutory requirements.

Burnside additionally insists, however, that even if the Board was permitted to promulgate regulations taking the seriousness of an offense into consideration in denying parole, the Board did not adopt such a regulation until after he was incarcerated. Burnside is correct in stating that the specific regulation adopted by the Board under § 549.261 (which is identical to the regulation adopted under § 217.690 on the basis of which Burnside was denied parole) was not adopted until after Burnside was incarcerated. We note, however, that under the rules and regulations in effect at the time Burnside was incarcerated, the first of the eight "important" factors to be considered by the Board in determining whether to release a prisoner was "[t]he type of ·crime [committed] and the length of sentence." *See Rules and Regulations Governing the Granting of Paroles and Related Procedures* 7(B)(1) at 14 (Appellant's Reply Brief Exhibit 1). Thus, at the time Burnside was sentenced, the type of crime and the sentence imposed were already established as important criteria in the Board's consideration of parole release. Burnside has not made any showing that the language of the regulation adopted after his incarceration changed the substance of these criteria to his disadvantage, and we see no reason in the language itself to think that it did.

Burnside's second claim concerns the change between the old and new statutes from mandatory to permissive language. Whereas formerly the Board was required to release a prisoner if in its opinion that release probably would not harm the individual or the community, it is no longer required to do so. Thus, hypothetically, a situation could arise under the new statute in which the Board determines that release probably would not harm either the prisoner or the community but nevertheless declines to release the prisoner. Were this to happen, of course, given the fact that release would have been required under the old statute, § 217.690 would disadvantage the prisoner and, under *Weaver*, would violate the *ex post facto* clause in the case of a prisoner sentenced before the statute was changed. This hypothetical situation, however, is not the case before us.

■ The reason given by the Board for denying Burnside parole was:

> Because of the seriousness of the offenses of which you were convicted and are presently serving time, in that the victim was kidnapped, robbed and excessive force was used in causing her to submit to rape, the Board believes that release at this time would depreciate the seriousness of the offenses committed and it is their decision to schedule you for a reconsideration hearing in March, 1986, with an interim review in March, 1985.

Appendix at 22. We concluded earlier in this opinion that the Board does not exceed its authority in denying parole release to an offender based on the seriousness of the crime committed. In doing so, we have implicitly recognized that the Board acts within its discretion in determining that the release of an offender convicted of a serious crime may be a detriment to the community. It is apparent from the reason given by the Board for denying Burnside's application for parole that the Board did not believe there was a reasonable probability that Burnside could be released without detriment to the community. Given

---

**5.** Not granting early release to an offender who has committed a serious crime serves both specific and general deterrence: it keeps the offender in custody and alerts potential offenders that they will serve a longer rather than a shorter term.

this determination, Burnside would not have been released under the old statute, and the new statute cannot be said to operate to his disadvantage.

The judgment of the District Court is affirmed.