**Harold Lamont OTEY, Appellant,**

v.

**Gary GRAMMER, Warden of Nebraska Penal and Correctional Complex, Appellee.**

No. 87–1522.

United States Court of Appeals, Eighth Circuit.

March 14, 1989.

Before LAY, Chief Judge, HEANEY,* Senior Circuit Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL and BEAM, Circuit Judges.

* The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989.

1. Riley testified that since arraignment he had "four weeks of jury cases going on, during which period of time I was in trial. I would

## ORDER DENYING PETITION FOR REHEARING EN BANC

The petition for rehearing en banc has been considered by the court and is denied by reason of the lack of majority of active judges voting to rehear the case en banc. Judge Arnold dissents from the denial of the petition for rehearing en banc.

The petition for rehearing is also denied by the court.

HEANEY, Senior Circuit Judge, with whom LAY, Chief Judge, and McMILLIAN, Circuit Judge, join, dissenting from the denial of the motion for rehearing and suggestion for rehearing en banc.

Otey received ineffective assistance of counsel before trial, during trial, and at sentencing. For this reason, this Court should rehear this case en banc.

INEFFECTIVE ASSISTANCE OF COUNSEL

A. PRETRIAL

Tom Riley of the Douglas County Public Defender's Office represented Otey from arraignment through sentencing.

Riley's assistance was ineffective because he failed to request a continuance at an early date or alternatively request to be relieved as Otey's counsel. The case went to trial fifty-four days from when Otey was arraigned and counsel was appointed. At the time of appointment, Riley knew that he would not have the time to adequately prepare for Otey's trial. Waiting until the day before the trial was to begin, Riley moved to continue the case because he was unprepared and had several other jury trials occupying his time since his appointment as Otey's counsel.[1] Riley fully expected that the continuance would be granted. The trial court, however, denied

venture to say, all but two of those days. During that period, of course, I had minimal, if any, contact with the defendant himself while I was doing trials on those cases." Riley surely knew his trial schedule when he was appointed counsel, and there is no excuse for taking any case, particularly a murder case, where the counsel knew that he or she did not have the time to provide adequate assistance.

the motion for continuance stating that the limited resources of the public defender's office was a problem of the administrator of that office and not the court's problem.[2]

The consequences of his failure to move for either a continuance or to be relieved as counsel at an early date were immense. Riley did not investigate the facts of the case or Otey's background other than review the police report. Out of forty-five witnesses endorsed by the government, Riley interviewed two police officers, the brother of the deceased, a person named "Satch or Chief," and Tucker Brown. As to Tucker Brown, the ex-boyfriend of the deceased who had confessed to the killing, Riley waited far too long to interview him—the interview took place in the prosecutor's office shortly before he was called as a witness. As to other witnesses, he stated that he would contact them as soon as the "horses" came back to Omaha on May 3rd—nearly a month after the guilty verdict was returned. He did little or no legal research on the case.

Riley's lack of preparation can be seen in the elusiveness and purposelessness of his meetings with Otey. He met with Otey five times before trial. Each meeting, however, lasted only a couple of minutes and occurred before Otey and Riley had to go into court to file a motion. Each time, Riley failed to question Otey about the facts of the case. Riley did, after the trial had begun, discuss the police report with Otey, but he still failed to bring the report with him so that Otey would have an opportunity to read it.[3] Furthermore, Riley failed to make the prosecution's witness list available to Otey to inspect.

Riley's lack of pretrial preparation taints the remainder of his conduct as counsel. Riley's future decisions can no longer be presumed to be merely strategic because Riley was not in the position to make reasonable strategy decisions since he was not prepared to make informed decisions on how to proceed.

Riley failed to move at the pre-trial *Miranda* hearing to have exhibit 42 suppressed. For discussion of exhibit 42, see *infra* at p. 1138. He failed to have psychiatric testimony prepared although Otey's Army record showed psychiatric problems. During opening arguments, Riley made a rash statement that the defendant would take the stand. This statement placed Otey in the unenviable position of being forced to take the stand with nothing to testify about.[4] Finally, Riley failed to notice that the police reports of the Mary Vinopal incident described her assailant as white costing Otey the opportunity to impeach an important government witness.

## B. SENTENCING

Riley made two egregious errors during the proceeding before the sentencing panel. Riley failed to object to the admission of exhibit 42. In addition, Riley introduced damaging evidence that Otey was a sexual sociopath likely to commit rape again.

### (1) *Exhibit 42*

Exhibit 42 is the transcript of the third taped interrogation Otey made with Omaha police. On the tape, Otey discussed his Army career focusing primarily on the disciplinary and psychiatric problems leading

2. There was some political tension between the judicial courts and public defender's office of Douglas County. This political tension injured Otey. In response to an explanation of why Riley had failed to interview witnesses, the trial court stated: "Well, I am not going to let you do that to me, Mr. Riley. You have a bunch of lawyers over there and you are one of them * * *. But I am not going to let the fact that Mr. Kinney [apparently the head of the public defender's office] won't hire another investigator stop us from [doing] what we have to [sic] got to do. Everybody has got to do their thing."

3. Riley failed to supply Otey with the police report in violation of a court order. The trial court ordered Riley to supply the police report to Otey since Otey had expressed to the trial court his desire to possibly represent himself pro se, as he had been unable to discuss the case with Riley during the two weeks preceding trial.

4. Otey was necessarily harmed by counsel's blurting out that Otey would testify in his own defense. Once on the stand, the scope of the questions was severely limited. The ultimate effect was that the jury thought that the defendant could not take the stand and defend himself.

to his discharge. He also answered questions as to his earlier sexual contacts with women. He bragged that he had raped over ten women, and he related many of the details of these rapes. The sentencing panel then used this confession as a basis for not finding that Otey had no significant history of criminal activity.

Riley did not object to exhibit 42 because he felt that *Miranda* had no application to sentencing. This conclusion is not justified by either the existing law or legal reasoning. The *Miranda* rule is derivative of the fifth amendment, and in 1972, the Supreme Court held that the fifth amendment privilege against self-incrimination may be asserted in any criminal proceeding. *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The particular circumstances of Nebraska's sentencing scheme do not justify the conclusion that *Miranda* does not apply. A sentencing panel is required to make reliable factual findings. As coerced confessions are the epitome of unreliable evidence, Riley should have objected strenuously to the use of such unreliable evidence in the sentencing hearing. I can find no legal basis for Riley's failure to object to the introduction of exhibit 42.

In addition, Riley's failure to object is not justified by sound strategy. It would be a strange tactic indeed, in a proceeding to determine whether a murderer should be sentenced to death, to permit the introduction of inadmissible evidence which demonstrates that the defendant has a history of being exceedingly violent and a habitual rapist. The only reason for Riley's failure to object to exhibit 42 is simple ignorance.

If proper objection had been made, exhibit 42 should have been excluded. *See Estelle v. Smith*, 451 U.S. 454, 462, 101 S.Ct. 1866, 1872, 68 L.Ed.2d 359 (1981). Otey's *Miranda* rights were not scrupulously honored.[5] *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). The tape recordings show that Otey requested counsel during the early stages of the interrogation, *see* exhibit E (tape recording of Otey's first confession), but the interrogating officers made a concerted effort to convince (or coerce) Otey into not asserting his right to counsel before answering further questions.[6] It is also apparent from exhibit E that the officers promised Otey that counsel would be provided before the taping of his confessions continued. Furthermore, during the second day of interrogation and before the confession in exhibit 42 was made, Otey

5. I recognize that this conclusion is contrary to one reached at an earlier date by a panel of this Court. *Otey v. Grammer*, 859 F.2d 575 (8th Cir.1988). The panel stated that Otey signed a rights advisory form during the second interview on January 29, 1978 in Tampa. The only signed rights advisory form, however, is dated January 31, 1978 in Omaha. In the record there are numerous other rights advisory forms; not one of which is signed by Otey. The panel also failed to note that Otey was denied counsel for six days. Finally, the panel concludes that the interrogating officers honored Otey's request that they not ask him questions about the McManus incident. That conclusion, however, fails to explain why the first question that, other than those related to his Army career, the officers asked was about his flight from Omaha; therefore, significantly implicating him in the McManus murder. It also fails to explain why the next subject matter asked was about Otey's "life of rape."

6. This confession was received in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The magistrate

relied on *Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) to avoid applying *Edwards*. It is the rule's character as prophylactic, rather than related to truthfinding, that does not require the rule to have retroactive effect in collateral hearings. *Id.* at 645, 104 S.Ct. at 1342. The implication of this view is that if police misconduct is evident from the facts then retroactive effect should be given. The appearance of police misconduct—promises made to Otey, the continued unavailability of counsel and the lack of *Miranda* warnings prior to the third confession—is certainly present in this case and is grounds for applying *Edwards*. Regardless of whether *Edwards* applies, Otey did not waive his fifth amendment rights under the law in force when Otey's direct appeals were foreclosed because the interrogating officers made a concerted effort to convince Otey into waiver without informing Otey of the risks of waiver. *See e.g.*, *Tague v. Louisiana*, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980) (per curiam); *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975).

made an unequivocal request for counsel that was subsequently ignored. In addition, Otey asked to limit the subject matter of the third confession, and the officers agreed. But at the first possible moment the officers asked questions that breached that agreement. Lastly, the officers failed to provide fresh *Miranda* warnings before they resumed the questioning that resulted in the confession in exhibit 42.

Otey's *Miranda* rights were not scrupulously honored, Riley should have objected to the admission on exhibit 42, and Otey was prejudiced by this failure.

### (2) *Evidence that Otey was a Sexual Sociopath*

Riley introduced evidence that Otey was a sexual sociopath likely to rape again. He introduced a letter from Dr. Michael Browne, Chief Psychiatrist of the Douglas County Hospital, that stated:

> These conversations [between Otey and himself] together with his tape recordings lead me to the opinion that Mr. Otey suffers from a severe personality disorder with paranoid, narcissistic, sociopathic and impulsive character traits. He would in my opinion fit the classification of sexual sociopath under Nebraska law.

Exhibit 39.

Later, Riley in his plea for leniency stated that Otey is "a loner, sexual sociopath, and * * * convicted murderer."

Riley's use of this sexual sociopath evidence manifests his failure to adequately prepare because such evidence does not support the existence of any mitigating circumstances. Just over a year before this case went to trial, the Nebraska Supreme Court determined the irrelevancy of such testimony and stated in reference to mitigating circumstances (c) and (g):

> These factors are referable to the defendant's mental condition. There is no evidence that the robbery, assault, and murder were committed under the influence of extreme mental or emotional disturbance. They were deliberate and wanton acts. The defendant's capacity to appreciate the wrongfulness of his acts and to conform to legal requirements was not seriously impaired by mental illness of defect, or intoxication. *Psychiatric examinations demonstrated that the defendant had an unstable, sociopathic personality but was not psychotic.* He acted on impulse but was aware of the difference between right and wrong.

*State v. Holtan,* 197 Neb. 544, 250 N.W.2d 876, 880 (1977) (emphasis added).

The court in *Holtan* went on to disregard the evidence of the defendant's sociopathic personality to find that mitigating circumstances (c) and (g) do not exist. *Id.*

The evidence that Riley had gathered and introduced did not demonstrate that Otey was psychotic. The evidence only demonstrated that Otey had a sociopathic personality. Such evidence was, thereby, irrelevant to any mitigating circumstance. *State v. Holtan,* 250 N.W.2d at 880. Riley merely paved the way for an easier determination that Otey was "exceptionally depraved" under section 29–2523(1)(d) (an aggravating circumstance).

In sum, I believe that this Cout errs in failing to grant Otey's motion for a rehearing en banc. Riley's assistance through his representation was grossly ineffective, and Otey was prejudiced by that conduct.