Harold Lamont **OTEY**, Appellant,

v.

**Frank X. HOPKINS, Warden of the Nebraska Penal and Correctional Complex, Appellee.**

No. 93–1050.

United States Court of Appeals, Eighth Circuit.

Submitted June 7, 1993.

Decided Sept. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 3, 1994.\*

---

\* Richard S. Arnold, Chief Judge, McMillian, Wollman, Circuit Judges would grant the suggestion.

John R. Gibson, Circuit Judge, filed dissenting opinion and would grant suggestion for rehearing en banc.

Shawn D. Renner, Lincoln, NE, argued, for appellant.

J. Kirk Brown, Lincoln, NE, argued (Don Stenberg on the brief), for appellee.

Before JOHN R. GIBSON, BOWMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

Harold Lamont Otey appeals from the district court's denial of his writ of habeas corpus. Otey has unsuccessfully challenged his capital sentence in five separate actions in both state and federal courts. Having presented his claims to sixteen separate judicial forums from 1978 to 1991, and having these claims rejected each time, Otey threw himself on the mercy of the State of Nebraska Board of Pardons (the Board). The Board denied his request for commutation, and this resulted in litigation in five additional state and federal forums attacking the federal constitutionality of the procedures utilized by the Board. We hold we have no subject matter jurisdiction under 28 U.S.C. § 2254 to consider his claims, and dismiss.

## I. BACKGROUND

On April 13, 1978, Otey was convicted in Nebraska state court of first degree murder in the perpetration of first degree sexual assault, and was sentenced to death. The murder occurred June 11, 1977. These past sixteen years, Otey has challenged his sentence many times, first on direct appeal in state court, see State v. Otey, 205 Neb. 90, 287 N.W.2d 36 (1979), cert. denied, 446 U.S. 988, 100 S.Ct. 2974, 64 L.Ed.2d 846 (1980); on motion for postconviction relief in state court, see State v. Otey, 212 Neb. 103, 321 N.W.2d 453, cert. denied, 459 U.S. 1080, 103 S.Ct. 502, 74 L.Ed.2d 641 (1982); in a petition for a writ of habeas corpus in federal court, see Otey v. Grammer, 859 F.2d 575 (8th Cir.), reh'g denied, 869 F.2d 1137 (8th Cir.), cert. denied, 497 U.S. 1031, 110 S.Ct. 3288, 111 L.Ed.2d 796 (1988); in a second state habeas corpus proceeding, see State v.

*Otey,* 236 Neb. 915, 464 N.W.2d 352 *cert. denied,* —— U.S. ——, 111 S.Ct. 2279, 115 L.Ed.2d 965 (1991); and again in a second petition for a writ of habeas corpus in federal court, *see Otey v. Hopkins,* 951 F.2d 354 (8th Cir.1991) (table), *cert. denied,* —— U.S. ——, 112 S.Ct. 894, 116 L.Ed.2d 797 (1992), *aff'g denial of motion to vacate,* 992 F.2d 871 (8th Cir.1993) (per curiam). Thus, Otey has unsuccessfully availed himself of every conceivable state and federal judicial avenue to challenge his sentence. His sentence of death has been pronounced valid by both state and federal courts. His right to life has been removed by the judicial system. He has been sentenced to death with all the process due him.

Having exhausted every means of challenging his sentence, Otey was scheduled to be executed June 10, 1991. His only remedy left was to appeal for mercy to the Board, the Nebraska executive forum with authority to commute sentences. The Board is composed of the governor, the secretary of state, and the attorney general.[1] *See* Neb.Rev. Stat. § 83–1,127 (Reissue 1987).

In anticipation of Otey's request for clemency, the Board met on June 6, 1991, to develop procedures for use in all death penalty commutation applications. Counsel for Otey was present; notably, he thanked the Board for developing these procedures. He did not raise any objections to the procedures developed. He also did not object to the attorney general, who had previously prosecuted Otey, sitting on the Board.

Otey filed a request for commutation to a life sentence on June 7, 1991. Upon this filing, the Nebraska statute mandated an automatic stay of execution until the Board "rule[d] on such application." Neb.Rev.Stat. § 83–1,132 (Reissue 1987). Although neither Nebraska statutes nor the Nebraska Constitution required a hearing, the Board granted Otey an informal public hearing on June 28 and 29, 1991. Counsel for Otey, counsel for the victim's family, assistant attorneys gener-

al, who appeared as counsel for the state, and various other persons spoke concerning whether the Board should grant commutation. For security reasons, Otey appeared via videotape. The Board also had before it a brief from Otey supporting his application, a report from the Board of Parole, and correspondence from interested parties in all fifty states and twenty-one foreign countries. After a recess, the Board voted 2–1 to deny commutation. The governor and the attorney general voted to deny the request, and the secretary of state voted to grant it. The Board then vacated the stay of execution and set another execution date. A description of the hearing and the events leading up to it can be found at *Otey v. State,* 240 Neb. 813, 485 N.W.2d 153, 158–61 (1992).

Otey brought an action in state district court, challenging the procedures of the Board on state and federal grounds similar to those which he raises in this action. The state district court granted Otey another stay of execution and subsequently rendered a judgment in his favor. The Nebraska Supreme Court unanimously reversed the judgment of the state district court and vacated the stay. *Id.* 485 N.W.2d at 163. The court based its decision on a holding that the Nebraska Constitution separation of powers clause prevents the judicial branch from reviewing the executive actions of the Board. *See id.* at 163. The court also discussed the merits, concluding that in any event, Otey's rights had not been violated. *See id.* at 164–68.

Otey next filed this successive and third petition in federal court for a writ of habeas corpus, claiming the actions of the Board violated his rights under the Due Process and Equal Protection Clauses and the Eighth Amendment. He did not request the district court to review the actual decision of the Board, but rather requested that the court review the procedures and make-up of the Board. The district court granted Otey an-

---

1. The duties of the Board are, *inter alia,* to exercise its pardon authority, make its own rules for operation, and "[c]onsult with the Board of Parole concerning applications for the exercise of pardon authority." *See* Neb.Rev.Stat. § 83–1,127 (Reissue 1987). The Board is not required

to hold a hearing to consider a request for commutation, and no statutory guidelines exist for hearings other than a requirement that if it does hold a hearing, it shall be informal. *See* Neb. Rev.Stat. § 83–1,129(2) (Reissue 1987).

other stay of execution in order to review the extensive records. The state moved in this court to vacate the stay, and this court denied that motion. *Otey v. Hopkins,* 972 F.2d 210 (8th Cir.1992).

Having accepted jurisdiction and after reviewing the merits, the district court granted the state's motions for summary judgment and denied Otey's petition. Otey now brings his fourth appeal to this court, arguing that the district court erred in granting the state's motions for summary judgment.

## II. DISCUSSION

### A. Otey's Claims

Otey brought his petition in federal court pursuant to 28 U.S.C. § 2254, requesting a writ of habeas corpus. Otey alleged the Board violated his rights under the Eighth Amendment and the Due Process Clause because the attorney general did not consider his request for clemency in an unbiased manner. Additionally, he claimed that prior to the commutation hearing, the attorney general discussed with the assistant attorneys general the state's presentation for the hearing. He also claimed the Board prevented

2. At the June 28–29 hearing, counsel for Otey objected to the assistant attorneys general appearing on behalf of the state. He stated that he did not object to anything they would say or do, but just to the position that they were counsel for the state. In response to that objection, the governor replied that the Board had the capacity to ferret out the appropriate value of any evidence and would not be unduly prejudiced by anything presented. Counsel for Otey then withdrew his objection. Tr., Neb.Bd. of Pardons Meeting at 97–98 (June 28–29, 1991).

3. Otey claims that *Dumschat* is distinguishable and has no application to his case because the petitioner in that case was seeking an explanation of the board's reasons for denying commutation, while Otey is seeking a different procedure. In holding that the Due Process Clause was not implicated, the Supreme Court explained that the standardless clemency statutes did not create a protectable interest in anything other than the right to request clemency. *See Dumschat,* 452 U.S. at 467, 101 S.Ct. at 2465.

The Nebraska Supreme Court, when discussing whether the Nebraska Constitution or clemency statutes created any substantive rights, stated:

[T]here are no provisions in Nebraska's Constitution or in its statutes creating a liberty inter-

the Parole Board from including in its report a recommendation regarding commutation. Finally, Otey alleged the Board violated his rights under the Equal Protection Clause by adopting the procedures used in his hearing just prior to his request for clemency, by allowing the assistant attorneys general to appear as counsel for the state,[2] and by not requesting a recommendation from the Board of Parole regarding whether Otey should be granted commutation. He claims this treatment was different from the treatment given other persons seeking clemency from the Board.

### B. District Court Decision

The district court held the Due Process Clause was not implicated because Otey had no protected interest which would trigger the protections of the clause. The court relied on *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 466, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981), which held that when a commutation statute does not impose standards as to when clemency must be granted, the statute does not create a protected interest in clemency and does not trigger due process protections.[3] *See id.* at 467, 101

est in commutation hearings other than the right to file an application for commutation.... There are no 'substantive predicates' which limit the Board of Pardons' discretion in granting commutations, i.e., no specific criteria which an applicant must meet to earn a commutation from the Board of Pardons, no conditions which must first be met, no specific conduct which the applicant must have avoided, no guidelines of any kind which must be followed by the Board. In short, the Nebraska Board of Pardons has the unfettered discretion to grant or deny a commutation of a lawfully imposed sentence for any reason or for no reason at all.

A review of Nebraska's Constitution, statutes, and procedures reveals that no right has been conferred upon Otey beyond the right to seek a commutation. He was afforded this right. Having followed its own procedures in granting him a hearing, having consulted with the Board of Parole, and having considered Otey's application, the Board of Pardons fulfilled any obligation it had to Otey.

*Otey v. State,* 240 Neb. 813, 485 N.W.2d 153, 166 (1992).

We recognize that the Nebraska Supreme Court did not decide the case on this ground, and thus this statement is dicta. Although not binding, it comes from the highest court in that state

S.Ct. at 2465 (holding that mere existence of the power to commute a lawfully imposed sentence creates no right or entitlement; no right was created other than the right to seek commutation); s 'e also *Olim v. Wakinekona,* 461 U.S. 238; 249, 103 S.Ct. 1741, 2465, 75 L.Ed.2d 813 (1983) (stating that no liberty interest is created when the decisionmaker is not required to ground the decision on objective, defined criteria). Because neither the Nebraska Constitution nor the clemency statute impose standards on the Board's actions, the court held that the Board is not subject to the requirements of the Due Process Clause.[4]

The district court noted that Otey's Eighth Amendment claim was based on an assertion that a death penalty scheme with no possibility of clemency is unconstitutional. Because Nebraska statutes do not prohibit executive clemency, and the constitution does not require a neutral factfinder in clemency proceedings, the court held that Otey's rights under the Eighth Amendment were not violated.

After allowing discovery concerning Otey's equal protection claim, the district court held that Otey's equal protection rights also were not violated. The evidence before the court revealed that prior to 1969 the Board did not exist. Since 1969, the Board had received only one application, other than Otey's, for commutation from a capital sentence. Because that petitioner's federal habeas corpus proceeding was still pending, the Board did not hold a hearing to consider that request and did not receive a recommendation from the Board of Parole. Thus, Otey's hearing was the first hearing held by the Board to consider a request for commutation from a capital sentence.[5]

Otey argued that strict scrutiny should apply to his equal protection claim because of his fundamental right to life, to a genuine opportunity for clemency, to petition the gov-

and confirms our own conclusions. Like the clemency statute at issue in *Dumschat,* the Nebraska clemency statute also is standardless. Otey had no state-created right other than the right to ask for mercy. As in *Dumschat,* this does not create a protectable interest in clemency. It also does not create a protectable interest in the manner in which the Board receives his request or in having unbiased decisionmakers on the Board. *See Smith v. Snow,* 722 F.2d 630, 631–32 (11th Cir.1983) (stating that because the Board of Pardons' power was completely discretionary, *Dumschat* controlled and due process did not attach to the manner in which commutation to a life sentence was considered). Due process never attached to the Nebraska clemency proceedings. Otey's distinction between *Dumschat* and his own case is a distinction without a difference.

4. Otey claims that the Board's consideration of his request for clemency is the "third tier" of review in the criminal process which was created by the Nebraska statutes, and that due process must attach to it just as it attaches to the first tier before the jury and the second tier on review before the Nebraska Supreme Court. The case to which Otey cites, however, *Rust v. Hopkins,* 984 F.2d 1486 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2950, 124 L.Ed.2d 697 (1993), holds merely that Nebraska has *two* tiers of review. Otey's argument rests on the assumption that when Nebraska enacted its clemency statutes, it created a mandatory third tier of review in the criminal process. We do not interpret the Nebraska Constitution or statutes as creating this third tier. Instead, Nebraska simply affords a defendant under a judicially valid sentence the

opportunity to ask for mercy from the executive branch. We also believe the Nebraska Supreme Court would interpret the state statutes and constitution in this manner. *See Otey v. State,* 485 N.W.2d at 166 (stating that no right was conferred other than the right to seek commutation).

Otey also claims that his substantive due process rights were violated, and complains that the district court did not address this claim. He argues that even if no liberty interests were involved, the Board acted arbitrarily and capriciously. The cases which Otey cites as support for this claim, however, are inapposite. *See Monroe v. Thigpen,* 932 F.2d 1437 (11th Cir. 1991) (addressing claim that decisions regarding parole were made on knowingly false information); *Block v. Potter,* 631 F.2d 233 (3d Cir.1980) (addressing claim that parole decision was based on impermissible grounds). No fundamental right is involved here, and Otey has provided no support for his claim that the attorney general's actions were arbitrary and capricious.

5. At the June 6 meeting to establish procedures, Otey's counsel recognized that no procedure had yet been established for hearings regarding clemency requests, stating that he requested procedure to be established for capital cases. Tr., Neb.Bd. of Pardons Meeting (June 6, 1991). *See also Otey v. State,* 485 N.W.2d at 159 ("In a May 24, 1991, letter to Governor Nelson, Otey's attorney, Victor Covalt, stated in part, 'I would be happy to meet with you or any of your staff at any time *to discuss Mr. Otey or the Pardons Board procedure in this unusual case.*'") (emphasis in original).

ernment for a redress of grievances in the same manner as other applicants for clemency, and to a recommendation at his clemency hearing from the Board of Parole. In response, the court stated:

> The right of Harold Lamont Otey to life has been removed by the judicial system, which caused him to be tried with all process due him and sentenced to death appropriately. The opportunity for clemency has never, so far as I can tell, been held to be a fundamental right. The right to petition the government, as such, is a fundamental right, but it is a right for a redress of grievances, whereas a clemency hearing is not a petition for redress of grievances, but a request for mercy. Any right that the petitioner had for the exercise of the advisory discretion vested in the Board of Parole by the Nebraska Constitution arose only from the Nebraska Constitution and cannot be classified as a fundamental right.

*Otey v. Hopkins,* Mem. and Order on Resp't's Second Mot. for Summ. J. at 12 (D.Neb. Dec. 31, 1992) (No. 4:CV92–3239). Because no fundamental rights were involved, the court held that the rational relationship standard of review was appropriate.

The court noted there was a rational basis for Nebraska to create procedures for use in reviewing applications for clemency in capital cases, and only Otey and one other person were members of that classification. Otey had in fact been treated more leniently than that other member; Otey was granted a two-day hearing. Additionally, the court stated that any differences in the treatment of Otey's request and requests from persons under a sentence of life imprisonment were not of the magnitude which would result in invidious discrimination. Accordingly, the district court held that Otey's equal protection rights were not violated.

## C. Jurisdiction

■ The district court's memoranda are thoughtful and well-reasoned. However, we must first address Nebraska's assertion that we have no subject matter jurisdiction under § 2254. We hold Otey's claims cannot be raised in a petition for a writ of habeas corpus; there is no subject matter jurisdiction.

■ The jurisdiction granted federal courts under § 2254 to review a state prisoner's claim is limited. Federal courts have jurisdiction to "entertain an application for a writ of habeas corpus ... only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254; *see Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). "The court does not review a judgment, but the lawfulness of the petitioner's custody...." *Coleman,* — U.S. at —, 111 S.Ct. at 2554; *see also Hill v. Wyrick,* 570 F.2d 748, 750 (8th Cir.) (holding the petitioner must allege facts in the petition indicating that the custody is illegal), *cert. denied,* 436 U.S. 921, 98 S.Ct. 2272, 56 L.Ed.2d 764 (1978). The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release. *See Preiser v. Rodriguez,* 411 U.S. 475, 498, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973).

■ When a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action. *See id.* at 486, 93 S.Ct. at 1834 (stating traditional scope of petitions for habeas corpus is that petitioner is being unlawfully subjected to physical restraint and citing examples); *Offet v. Solem,* 823 F.2d 1256, 1257 (8th Cir.1987) (stating that to the extent a petitioner is directly attacking the length of confinement, the proper vehicle for a claim is a petition for a writ of habeas corpus). To determine whether Otey properly brought his claims under § 2254 as a petition for a writ of habeas corpus, then, we must consider what Otey is alleging, what relief he is seeking, and whether that relief is available through a petition for a writ of habeas corpus.

Here, Otey is not directly challenging whether he was lawfully convicted of murder or whether his sentence of death is an appropriate punishment for that crime. He admits he has exhausted every possible avenue to challenge his conviction and sentence in both

the state and federal courts, and admits his conviction and sentence are lawful. He is not claiming that he is entitled to clemency or that the Board should have granted his request. Instead, he is challenging only the process by which the Board considered his request for clemency, and the Board's constituency. Otey is not seeking from this court relief in the form of an order to commute his sentence, a kind of relief that we clearly would have no authority to give. In frankness, Otey stated at oral argument that he claims only an entitlement to redress in the form of an order from this court for the Board to conduct another clemency hearing in a different manner. Presumably, Otey does not want the attorney general's office appearing for the state, and he does want a Chinese wall between the attorney general and his assistants who have been prosecuting him for sixteen years. He does not seek recusal by the attorney general.

Issuance of such an order would not give Otey commutation; it would give him only an opportunity to plead again for mercy. If Otey was granted that opportunity, the Board would not be compelled to grant clemency. This is not the stuff of redress which can be sought under § 2254.

Otey argues that his claims were correctly brought under habeas, and has referred to cases he claims supports this argument. These cases, however, demonstrate only that an executive forum can be reviewed in habeas when the petitioner is challenging the fact or duration of his custody and is seeking relief from that custody. *See Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (challenging sentence of death for allegedly insane person and seeking relief from sentence on ground that it was unconstitutional to execute an insane person); *Jean v. Nelson,* 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (challenging attorney general's order to detain undocumented aliens and seeking relief from the order); *Preiser,* 411 U.S. 475, 93 S.Ct. 1827 (challenging lawfulness of incarceration and seeking grant of good-time credit which would result in immediate release on ground that deprivation of good-time credit was unconstitutional); *Parton v. Armontrout,* 983 F.2d 881 (8th Cir.1993) (challenging lawfulness of incarceration and seeking grant of parole on ground that state unlawfully cancelled presumptive release date); *Burnside v. White,* 760 F.2d 217 (8th Cir.) (challenging lawfulness of custody and seeking immediate release on ground that parole was unconstitutionally denied because of ex post facto law), *cert. denied,* 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985). The cases Otey has cited do not support his argument that we have jurisdiction. They further convince us that habeas is not the vehicle; his federal constitutional claims are collateral to his custody and sentence.

██ Otey also argues that under *Preiser,* he is compelled to bring his claims in habeas, and is barred from bringing them under 42 U.S.C. § 1983. We disagree. In *Preiser,* the Supreme Court held that a state prisoner challenging the fact or duration of his physical imprisonment and seeking a determination that he is entitled to immediate or speedier release has a federal remedy only through a writ of habeas corpus, and cannot bring that claim under § 1983. *Preiser,* 411 U.S. at 500, 93 S.Ct. at 1841. *Preiser* does not preclude Otey from bringing his claim in a § 1983 action because he admits his sentence is lawful and is not seeking a determination that he has an entitlement to commutation. *See Smith v. Snow,* 722 F.2d 630 (11th Cir.1983) (addressing § 1983 claim brought by person under a capital sentence that the Board of Pardons and Paroles disposed of his application for clemency in an unconstitutional manner); *see also Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (addressing claim brought under § 1983 that the failure to provide plaintiff with a statement of reasons for denying commutation violated his due process rights and seeking a declaratory judgment); *Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 2973–74, 41 L.Ed.2d 935 (1974) (stating claim that procedures for revoking good-time credits were unconstitutional and seeking damages as well as establishment of appropriate procedures may be brought under § 1983); *Offet v. Solem,* 823 F.2d 1256 (8th Cir.1987) (holding claim alleging deprivation of good-time credits and seeking declaratory

relief and damages was properly brought under § 1983); *Walker v. Prisoner Review Bd.*, 694 F.2d 499, 501 (7th Cir.1982) (holding claim alleging plaintiff was denied parole in unconstitutional manner was properly brought under § 1983 because the plaintiff was seeking only an injunction requiring rehearing in a constitutional manner); *Williams v. Ward*, 556 F.2d 1143, 1150–51 (2d Cir.) (distinguishing *Preiser* and allowing challenge to parole procedures under § 1983 because redress sought would only allow rehearing and question of release would still be within discretion of parole board), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977); *Haymes v. Regan*, 525 F.2d 540, 542 (2d Cir.1975) (stating because "it is the manner of parole decision-making, not its outcome, that is challenged, appellant does not present a complaint of the sort in *Preiser v. Rodriguez* ... for which habeas corpus would be appropriate").

We have reviewed Otey's claims and the district court's analysis of those claims on the merits. We do not decide this case on the merits; however, if this case had been properly before us for review, we would affirm the district court.

### III. CONCLUSION

Otey's claims that the Board violated his constitutional rights in the procedures by which it considered his request for clemency are not cognizable in a petition for a writ of habeas corpus. The federal courts do not have subject matter jurisdiction over these claims under 28 U.S.C. § 2254. We order this case dismissed.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent.

I believe we have jurisdiction under habeas corpus to address Otey's claim that the Nebraska clemency procedure violates his rights under the federal constitution. I further believe that the clemency procedure deprived Otey of substantive due process.

**1.** Further, it inevitably follows from the court's decision today that Otey will pursue his section

### I.

The court today reads 28 U.S.C. § 2254 too narrowly, and contrary to holdings of the United States Supreme Court.[1] Otey is in custody under a sentence of death. He seeks to forestall execution of that sentence on the grounds that the clemency procedures afforded him violated the United States Constitution. This is the type of claim that the United States Supreme Court has considered on petitions for writ of habeas corpus. *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), was a habeas corpus case in which the Supreme Court examined the state's procedures for determining whether a prisoner under sentence of death was insane and therefore should not be executed. Otey objects to the state's clemency procedure, which is the last barrier between him and execution of his death sentence. *Ford* points to the propriety of habeas in Otey's case.

Similarly, the federal courts have often reviewed claims that a state's method of executing condemned prisoners violated the federal constitution, and have done so on habeas review, or have suggested that the claim should have been raised in a habeas petition. *See, e.g., Gray v. Lucas*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983) (Burger, C.J., concurring in order denying certiorari); *Gomez v. United States District Court*, —— U.S. ——, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992); *In re Kemmler*, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); *Spinkellink v. Wainwright*, 578 F.2d 582, 616 (5th Cir.1978). In all of these cases the prisoner making the claim was already deprived of his expectancy of life or liberty by the judicial process, but the court examined the constitutionality of the method of execution under a habeas petition.

The Supreme Court in recent months has recognized the significant role clemency plays as a remedy for preventing miscarriage of justice where judicial process has been exhausted. In *Herrera v. Collins*, —— U.S. ——, —— – ——, 113 S.Ct. 853, 866–69, 122 L.Ed.2d 203 (1993), the Supreme Court,

1983 remedy, further delaying the ultimate disposition of his case.

speaking through Justice Rehnquist, held that there is ordinarily no federal habeas review (indeed, no judicial review at all) available for claims of actual innocence based on new evidence discovered after the time for filing a motion for new trial. —— U.S. at ——, 113 S.Ct. at 869. The appropriate "forum" in which to raise such actual innocence claims is that of executive clemency, which acts as a "fail safe" against executing innocent people. *Id.* —— U.S. at ——, 113 S.Ct. at 868. By relying on the existence of executive clemency to justify excluding certain kinds of claims from judicial scrutiny, the Court recognized that clemency procedures are an important last step in the descent to execution. When such a step is conducted in a way that violates the United States Constitution, it is the function of habeas to stay the executioner's hand.

## II.

The majority holds that because there are no standards governing the Board's pardon decisions, the Due Process Clause has no application. While there are superficial similarities between Otey's case and *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), there is a theoretical divide between Dumschat's reliance on procedural due process and Otey's plea for substantive due process. Dumschat claimed that by granting three-fourths of the applications for commutation of life sentences the Board of Pardons created a constitutional liberty interest or entitlement to commutation, and that he was therefore entitled to a statement of reasons for denial of his application for commutation. Dumschat's claim of an expectation of pardon was far different from Otey's substantive due process claim that the clemency procedures are fundamentally unfair in including the state's chief prosecuting officer as a member of the Board of Pardons. Otey's claim focuses not on a right to *receive* pardon, but on a right to *seek* it before an unprejudiced Board.

**2.** I should make clear that the issue is not the propriety or impropriety of the Board of Pardons' decision on the application for grant of clemency, but rather the unconstitutionality of

## III.

Substantive due process protects individuals from government conduct that "shocks the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). The idea of a prisoner pleading for his life before a board that includes the very official responsible for his prosecution and conviction is shocking to the judicial conscience.

Before 1920, Nebraska vested clemency power in the governor, and the governor had the discretionary power to grant or deny clemency, or take no action. Nebraska established a more formalized procedure in 1920 when it transferred the clemency power to the Board of Pardons. Modifications to the procedure in 1969 gave further structure to clemency proceedings. Nebraska statutes mandate that properly filed clemency requests be considered. *See* Neb.Rev.Stat. § 83–1,129 (1987 Reissue). The statutes further mandate that when a petition for clemency is filed, the execution is stayed until the Board rules on the application. Neb.Rev.Stat. § 83–1,132 (1987 Reissue). The application shall be considered by the Board with or without hearing at its next regular meeting, or within 30 days, whichever is earlier. If a hearing is held, it is to be conducted in an informal manner, but a complete record of the proceedings is to be made and preserved. Neb.Rev.Stat. § 83–1,129. The State of Nebraska has thus by its constitution and statutes replaced the sole authority of its governor with a structure that governs the deliberations and proceedings of a Board consisting of the Governor, Attorney General and Secretary of State.

The participation of the Nebraska attorney general as a voting member of the Board of Pardons renders the Nebraska clemency procedure fundamentally unfair.[2] Attorney General Stenberg's statements of personal objectivity at the hearing do not cure this defect.[3] By statute, the attorney general

the procedure under which the Board considered Otey's clemency request.

**3.** The fact that Otey's counsel withdrew a procedural objection after the attorney general made

**1134**

advises county attorneys on criminal matters, and appears for the state and prosecutes criminal proceedings in the Supreme Court. *See* Neb.Rev.Stat. § 84–205 (1987 Reissue). The assistant attorneys general who participated in Otey's prosecution, sentencing, appeals, and clemency hearing did so in the attorney general's name.[4] Indeed, every pleading submitted by the state in Otey's case, including the briefs submitted to this court, list the attorney general as the counsel of record. The attorney general, having successfully obtained affirmance of Otey's death sentence in the Nebraska Supreme Court, can hardly be expected to oppose the execution of this sentence. As prosecutor, the attorney general determined that it served the public welfare to seek the death penalty as the appropriate punishment for Otey. It is unreasonable to assume that the attorney general would freely consider the same sentence inappropriate at a clemency hearing, especially when his own representatives are arguing before him in favor of retaining the sentence. With the attorney general's position fixed, a petitioner must obtain the vote of the other two members of the panel. Otey received one favorable vote, but not both. The State has created a playing field that is tilted toward denial and is therefore fundamentally unfair.

Given the crucial role of clemency in the states' capital punishment laws, I believe it violates substantive due process to entrust the pardoning power, even in part, to the state's chief prosecutor, as was done in Otey's case. Executions, like convictions, "cannot be brought about by methods that 'offend a sense of justice.'" *See Rochin,* 342 U.S. at 173, 72 S.Ct. at 210.

For these reasons, I respectfully dissent.

these statements does not, in my view, constitute a waiver of or otherwise affect Otey's present claims. At the beginning of the hearing, the Governor announced that the proceedings would be informal and that the rules of evidence would not apply. Under these circumstances, Otey's counsel had no obligation to preserve formally his objection.

4. The assistant attorneys general presented the State's "case" against Otey at the clemency hearing. Attorney General Stenberg's claim to have no personal knowledge of the content of their presentations does not alter their institutional status as his representatives.